### In re BLAINE RICHARDS & CO., INC., Debtor.

**Bankruptcy No. 180–06014–21.**

United States Bankruptcy Court, E. D. New York.

April 10, 1981.

Goldman, Horowitz & Cherno, Mineola, N.Y. by William M. Goldman, New York City, for debtor.

Fogelson, Fogelson & Collins, New York City by Nancy A. Klein and Jeffrey P. Fogelson, New York City, for J. H. Rayner & Co., Ltd., petitioning creditor.

Moore, Berson, Lifflander & Newhinney, New York City by Michael T. Sullivan, New York City, for Fogelson, Fogelson & Collins.

## OPINION

CECELIA H. GOETZ, Bankruptcy Judge:

The very specific and limited question before the Court at the present time· is whether Blaine Richards & Co., Inc. ("Richards"), against which J. H. Rayner & Co., Ltd. ("Rayner") has filed an involuntary petition under Chapter 7 of the Bankruptcy Code, has twelve or more creditors, requiring that at least three creditors join in such

a petition. Richards has filed a motion to dismiss Rayner's petition on the ground that its creditors are twelve or more in number.

Section 303(b) of the Bankruptcy Code (11 U.S.C. § 303(b)) provides that an involuntary case may be commenced by one or more holders of claims aggregating at least $5,000 if there are "fewer than twelve such holders, excluding any employee or insider of such person and any transferee of a transfer that is voidable" under various sections of the Code. If there are more than twelve such persons, three or more must join in the petition.[1]

The creditors claimed by the debtor, and the amounts claimed to be owed, are shown below:

| CREDITOR NAME | NATURE OF CLAIM | AMOUNT OF CLAIM |
|---|---|---|
| Xerox Corporation | Equipment purchase | $ 4,614.00 |
| Xerox Corporation | Monthly usage | 65.56 |
| Amoco Oil Co. | Auto expense | 19.00 |
| American Express, Customer Service Dep't | Travel and/or entertainment | 435.83 |
| Carte Blanche | Travel and/or entertainment | 864.62 |
| Drescher, Dorkin Kaplan & Co. | Audit | 10,300.00 |
| Diners Club | Travel and/or entertainment | 266.28 |
| MHTCO Retail Services Department | Travel and/or entertainment | 639.69 |
| New York Telephone Co. | Telephone | 254.03 |
| RCA Global Communications | Telex usage | 206.17 |
| RCA Service Company | Telephone maintenance | 308.38 |
| Trans World Airlines Inc. | Travel and/or entertainment | 1,675.00 |
| The Chase Manhattan Bank | Travel and/or entertainment | 765.28 |
| We're Associates, Inc. | Rent | 1,359.14 |

## DISCUSSION

Apart from Rayner, itself, the alleged debtor claims thirteen creditors. On a variety of grounds, Rayner disputes the inclusion of each and every one of these creditors for purposes of § 303(b). Two of the firms named, Manufacturers Hanover Trust Co. Retail Services Department ("Manufacturers") and the Chase Manhattan Bank, are alleged to be creditors of Richards' prin-

1. The pertinent provisions of § 303(b) read:
   "(b) An involuntary case is commenced by the filing with the bankruptcy court of a petition under chapter 7 or 11 of this title—
   "(1) by three or more entities, each of which is either a holder of a claim against such person that is not contingent as to liability or an indenture trustee representing such a holder, if such claims aggregate at least $5,000 more than the value of any lien

on property of the debtor securing such claims held by the holders of such claims;
   "(2) if there are fewer than 12 such holders, excluding any employee or insider of such person and any transferee of a transfer that is voidable under section 544, 545, 547, 548, 549, or 724(a) of this title, by one or more of such holders that hold in the aggregate at least $5,000 of such claims;"

cipal executive officer, and not of Richards. Other firms claimed as creditors are said to have received voidable transfers or to be secured. Several are challenged on the ground that they are owed only small, recurrent bills, and should not be permitted to swell the creditor count. One creditor is objected to as an insider.

The issues raised by Rayner as to certain creditors are not free from doubt. However, the Court is satisfied that enough creditors must be eliminated to reduce the total number below the twelve needed to entitle the alleged debtor to dismissal of Rayner's petition. Accordingly, the alleged debtor's motion is denied.

### A. *CHASE MANHATTAN BANK; MANUFACTURERS HANOVER TRUST CO., RETAIL SERVICES DEPARTMENT*

The debtor has listed the Chase Manhattan Bank ("Chase") and Manufacturers as creditors because, under its employment agreement with its President and chief executive officer, I. Fred Schafer, he was entitled to reimbursement for all his travel, entertainment, and similar expenses. He used the personal charge cards issued to him by these two companies to charge expenses of this character for which the debtor routinely paid.

At the time the petition was filed, there was owed Manufacturers on a Master Charge card the amount of $639.69. On a Visa card issued by Chase, there was owed $765.28.

Uncontroverted evidence established that the cards were issued to Mr. Schafer; that the agreement for payment on these cards was between these firms and Mr. Schafer; and that it was he, who, so far as they were concerned, owed the amounts charged. That Mr. Schafer may have had an agreement with the debtor requiring reimbursement of these expenses does not convert his creditors into creditors of the debtor. Any monies owed these two creditors is owed by Mr. Schafer. Neither Manufacturers, nor Chase, is a creditor of Richards.

### B. *AMERICAN EXPRESS; DINERS CLUB; RCA GLOBAL COMMUNICATIONS, INC.*

Several of Richards' creditors are challenged as the recipients of voidable preferences.

Bills rendered to Richards subsequent to the filing of the petition on October 8, 1980, which included charges for goods and services furnished prior to that date, were not paid to the extent that they included such charges. However, in the case of three creditors, pre-petition charges were inadvertently paid post-petition. These creditors are American Express, Diners Club, and RCA Global Communications, Inc. When the American Express statement covering charges prior to October 3, 1980 was received, it was paid on October 24, 1980, 21 days after the filing of the petition. The next month's bill, however, still carried some pre-petition charges totaling $435.83. Richards excluded these charges from the amounts subsequently remitted to American Express, and now claims that firm as a creditor in that amount. Since November 3, 1980, Richards has paid American Express on post-petition charges a figure well in excess of the $435.83 owed on October 8, 1980 and still owed that company.

Although there is some evidence that the American Express card, like the Visa and Master Charge card, held by Mr. Schafer had been issued to him on his own credit, the Court will assume that it was a corporate card and that the monies owed American Express were a corporate debt.

Diners Club rendered a bill on September 30, 1980 for $266.28. That bill has never been paid. However, a subsequent bill in the amount of $1,478.97 was paid on November 13, 1980. Apparently overlooked was the fact that this bill, too, covered charges made pre-petition, namely, on July 10, September 7, 22, 23, and 24, and October 5, 1980, totaling over $1,300. Diners Club is claimed as a creditor owed $266.28.

Richards owns telex equipment, for the use of which it pays a monthly charge to

RCA Global Communications, Inc. ("RCA Telex"). On October 4, 1980, Richards received a bill for the use of this equipment for the period from September 2 through September 30, on which Richards computed, after deducting certain credits, that it owed $206.17. It did not pay this bill, and claims RCA Telex as a creditor as of the date of the filing of the petition in that amount. However, on November 13, 1980, Richards paid a bill from RCA Telex which included charges for services rendered pre-petition from October 1 through October 3, 1980, totaling around $59.

■ All these creditors must be excluded in determining how many creditors Richards had on the date of filing. They must be excluded because they are all recipients of a transfer voidable under § 549(b) of the Code.

Section 549(b) makes voidable a transfer that occurs after that the commencement of an involuntary case, but before the order of relief, if given for a debt that arose before the commencement of the case. Section 303(b)(2) explicitly excludes from persons to be counted as creditors any transferee of a transfer voidable under § 549.

Admittedly, the payments to all three for pre-petition charges were inadvertent. No doubt the rule being applied is a technical one. But the claim that these three companies are creditors for purposes of § 303(b) rests on equally technical grounds. If the holders of these running accounts are creditors, they are all creditors who have received voidable preferences.

American Express, Diners Club, and RCA Global Communications may not be calculated in counting Richards' creditors under § 303(b).

### C. WE'RE ASSOCIATES

We're Associates is the landlord of the premises located at 3000 Marcus Avenue, previously occupied by Richards. According to the alleged debtor, We're Associates, as of the date of the filing of the petition, was owed $1,359.14, the rent due for the month of October, plus taxes payable that month. The landlord then had in its possession a security deposit for $1,873.96.

Because of Richards' failure to pay the October or November rent, We're Associates, on November 12, 1980, brought an action against Richards, demanding judgment in the amount of $2,594.29, together with costs and attorneys' fees.

■ In September, less than ninety days before the petition was filed, Richards paid the landlord rent due for the last four months, totaling $4,998.73. Rayner contends that the payment of four months' arrearages to the landlord within ninety days of the filing of the petition constitutes a voidable preference under 11 U.S.C. § 547, and requires the exclusion from the creditor count of We're Associates as the transferee of such a voidable transfer. Section 303(b)(2) requires the exclusion of any transferee of a transfer voidable under § 547. *Prima facie*, the payment to the landlord in September of four months' rent appears to meet the description of a voidable transfer in § 547(b).

For purposes of a threshold motion of this character, it is not necessary for the Court to determine whether, in fact, a voidable transfer did take place. The existence of a substantial question would, in itself, lead a creditor to refuse to participate in putting his debtor into involuntary bankruptcy. It is obviously to the benefit of recipients of preferential transfers for the debtor to stay out of bankruptcy. It is presumably for this reason that Congress excluded such creditors in calculating the number needed to file a petition in voluntary bankruptcy. It would be contrary to the legislative intent to include a creditor which, *prima facie*, has received a preferential transfer. Therefore, We're Associates is not to be deemed a creditor for purposes of § 303(b).

Rayner also objects to the inclusion of We're Associates on the ground that as of the date of filing, it was a secured creditor in possession of a deposit in excess of the amount then owed it. Because the Court is excluding We're Associates as a preferred creditor, it is unnecessary to determine if it was, in fact, a secured creditor, and if, for

that reason also, it should be eliminated from the count.

### D. *AMOCO OIL COMPANY; NEW YORK TELEPHONE COMPANY; RCA SERVICE COMPANY*

With only a few exceptions, all the creditors claimed by Richards are the type of creditor which almost every householder and virtually any self-employed individual, no matter how small his business, could claim at any point in time: credit card companies, utilities, a landlord. All these creditors were being paid regularly on receipt of their bills up to the date of filing; payments to many have been resumed since the date of filing, with only the bills rendered post-petition for pre-petition charges remaining unpaid.

As Bankruptcy Judge R. J. Sidman observed in a similar context in *In re Alexandria Sand & Gravel Co.,* 3 BCD 835 (S.D. Ohio 1977), involving the statutory predecessor of § 303(b), *i. e.,* § 59(b) of the Bankruptcy Act of 1938, if the court includes utility companies and similar suppliers in the creditor count, "one can hardly imagine a business enterprise which would not, at any point in time, have 12 or more creditors." To Judge Sidman, such a result seemed incompatible with the legislative intent:

> "It would not appear that it was the intent of Congress to create a statutory remedy (a single creditor petition) that would be inapplicable in most all cases, and thus virtually meaningless. Small, recurrent monthly bills incurred by an

alleged bankrupt, and kept current, are properly excluded from the creditors to be counted in applying the provisions of § 59(e) of the Act to the circumstances of this case." *Id.* at 836.

Applying these principles, Judge Sidman excluded from the creditor count various suppliers having claims ranging in amount from $54.10 to $1,016.80.

The issue decided by Judge Sidman is one on which the courts divided in interpreting the Bankruptcy Act. The Fifth Circuit, like Judge Sidman, excluded small, current debts from the creditor count. *Denham v. Shellman Grain Elevator,* 444 F.2d 1376 (5th Cir. 1971). *Accord: In re Blount,* 142 F. 263 (E.D.Ark.1906); *Security Bank & Trust Co. v. Tarlton,* 294 F. 698 (W.D.Tenn.1923); *In re Alexandria Sand & Gravel Co., supra; In re Gardner,* 3 BCD 571 (B.C.S.D.Tex. 1977). The Eighth Circuit (*Grigsby-Grunow Co. v. Hieb Radio Supply Co.,* 71 F.2d 113 (8th Cir. 1934); *Theis v. Luther,* 151 F.2d 397 (8th Cir. 1945), *cert. denied,* 327 U.S. 781, 66 S.Ct. 681, 90 L.Ed. 1009 (1946)), and the Ninth Circuit (*In re Okamoto,* 491 F.2d 496 (9th Cir. 1974)), took a contrary position, as did also the District Courts in *In re Alden,* 2 F.2d 61 (D.C.Mass.1924); *In re Kirk,* 198 F.Supp. 771 (D.C.Pa.1961); *In re Hall,* 27 F.2d 999, 1000 (W.D.Pa.1928); *In re Colorado Lime Co.,* 298 F.Supp. 1053 (D.Colo.1969).

The Court of Appeals for the Second Circuit apparently never ruled on this precise question.[2] The lower courts in New York were divided.

---

**2.** In *In re Gibraltar Amusements, Ltd.,* 291 F.2d 22 (2d Cir. 1961), the Court of Appeals had occasion to consider the philosophy underlying the numerical requirement. That case involved the question as to whether a subsidiary corporation could be considered a separate creditor from its parent for purposes of supplying the three creditors required to file an involuntary petition where more than twelve exist. Circuit Judge Friendly, in a very strong dissent, drew from the legislative history an underlying policy which would favor a very strict reading of the three-creditor requirement. He noted that this was one of many provisions representing a compromise between those who wanted to give creditors an effective remedy, "and those who were determined to protect the debtor from the

harassment of ill-considered or oppressive involuntary petitions, including those by a single creditor interest." 291 F.2d at 28. The majority of the court, speaking through Judge Smith, however, found in the detailed ground rules laid down in the Act for "counting creditors" an indication "that the principal Congressional fear of abuse was not that a debtor would be too easily petitioned into a bankruptcy—rather that through connivance with friendly creditors, the insolvent debtor might be able unfairly to hamstring one or two large creditors." 291 F.2d at 25. With the appellate court thus divided on the question of legislative intent, it is hard to discern what position it would take on the issues raised here.

In a thoughtful and persuasive Opinion, subsequently relied on by the Fifth Circuit, the District Court for the Northern District of New York refused to include as creditors persons holding small claims for rent, storage charges, and club dues, saying:

"Creditors of this kind, who feel secure in having their bills promptly paid, and can have them paid immediately upon insistence, cannot be counted to create an excess number of creditors and defeat the purposes of the Bankruptcy Act." *In re Branche*, 275 F. 555, 557 (W.D.N.Y.1921).

Some fifteen years later, the District Court for the Western District of New York declined to follow *In re Branche*, citing the authority to the contrary and concluding that "the better view is that the small running account claim should be counted as of the date the petition is filed, because no exception has been made with respect to them and they are claims provable in bankruptcy." *In re Murray*, 14 F.Supp. 146, 147 (W.D.N.Y.1936).

However, after that opinion was written, the Court of Appeals for the Fifth Circuit added its weight to the courts that denied recognition to "creditors holding small insignificant debts which consisted of consumer accounts that were customarily paid monthly." That court concluded:

"It is our belief that whether or not a scheme was involved, it was not the intent of Congress to allow recurring bills such as utility bills and the like to create a situation which, by refusal of these small creditors to join in an involuntary petition, can defeat the use of the Bankruptcy Act by a large creditor, as in the subject case. This would be grossly inequitable * * *." *Denham v. Shellman Grain Elevator, Inc., supra*, 444 F.2d at 1379.

Reinforcing the reasons given for refusing to consider small, current debts in determining how many creditors need join in an involuntary petition is the principle of *"De minimis non curat lex." In re Burg, supra; In re Gardner, supra; Security Bank & Trust Co. v. Tatum, supra.*

"It is illogical that creditors who hold claims of $50.00 or less are denied vote at a meeting of creditors, thus having no voice, but (by being counted as a creditor for the purposes of Section 59 of the Bankruptcy Act) can defeat an attempt by a valid petitioning creditor to prosecute an involuntary petition in bankruptcy. It would be an anomaly if an adjudication occurred as a result of an involuntary petition filed by three creditors, and, thereafter, two of ʹthe three creditors could not vote at a meeting of the creditors. This Court also believes that if two petitioning creditors held claims of $50.00 or less, any alleged bankrupt would vigorously attack their standing to be a petitioning creditor.

"In 1938, the Congress denied small creditors ($50.00) their numerical vote because such claimants had 'no substantial interest.' Application of the Fifth Circuit's theory is even more compelling when placed in the perspective of today's dollar versus the 1938 dollar. If $50.00 was *de minimus* in 1938 what would constitute *de minimus* today?" *In re Gardner, supra*, 3 BCD at 573–74.

The problem with which the courts had been struggling under the Act was to place a reasonable interpretation on the requirement that three creditors must join where twelve creditors exist. In the wholesale reorganization of the law represented by the Bankruptcy Code, Congress could have, but did not, clarify the law in this area. All that House Report No. 95–595, the authoritative commentary on the Code, says relevant to the precise point is that: "As under current law, if the debtor has more than twelve creditors, three creditors must join in the involuntary petition." H.R.Rep.No. 95–595, 95th Cong., 1st Sess. 322 (1977), U.S.Code Cong. & Admin.News 1978, p. 5787. Rejected by Congress was the recommendation of the Commission on Bankruptcy Laws of the United States that a single creditor, provided it had claims of $2,500 or more, be permitted to file an involuntary

petition. *Report of the Commission on the Bankruptcy Laws of the United States, Part I*, House Document No. 93–137, 93d Cong., 1st Sess. 15 (1973).

Congress, in addition to preserving the requirement that three or more creditors join where more than twelve exist, also raised the dollar amount of the claims that petitioning creditors must hold before an involuntary petition can be filed. Under the Act, claims aggregating $500 were sufficient; the Commission on Bankruptcy Laws recommended $2,500; Congress put the figure at $5,000.[3]

The increase in the dollar amount needed to file an involuntary proceeding gives new pertinency to the principle of *de minimis*. If, on the one hand, debtors are protected from being forced into involuntary bankruptcy by small creditors holding insignificant claims, on the other hand, large creditors, entitled to demand the aid of the bankruptcy laws, should not be blocked from access to this remedy by the deliberate creation of a variety of small claims, too miniscule to give their holders any realistic interest in the affairs of the alleged bankrupt. If in 1938 Congress denied creditors holding claims of $50 or less a vote at creditors' meetings because they had no "substantial interest," how much less interest in today's dollars does a creditor holding a claim for $25, or less, possess? If a claim of $50 was too small in 1938 to entitle its holder to a vote at a creditor's meeting, it should also be too small in 1981 to play a part in determining whether bankruptcy should be pursued or not.

██ Beyond the principle of *de minimis* the Court is unprepared to go at the present time. Of the creditors which fall into the category of essential services generally paid on a regular monthly basis, only one clearly falls into the *de minimis* category, and that is Amoco. Subsequent to the filing of the petition, Richards received a bill for $19 from Amoco based on gasoline charged on a credit card issued to Richard and used by Mr. Schafer. The figure represents one tankload of gasoline. But for the filing of Rayner's petition, it can be assumed that Amoco's statement would have been paid shortly after receipt, as were Amoco's other monthly statements. To include Amoco as a creditor for purposes of § 303(b) would drain of any commercial reality the right of a single creditor to file an involuntary petition. A tankful of gasoline is *de minimus*.

As to the other three regular suppliers, the record is less clear. These are the New York Telephone Company, RCA Service Company, and Xerox Corporation. All three supply routine business services; all three were paid their bills as rendered up to the date of the filing of the petition. However, with respect to each, there are complicating circumstances. The amount owed the New York Telephone Co., $254.03, is not clearly *de minimis*; the debt to RCA Service Company includes a special one-time charge; there is a large amount owed Xerox Corporation for purchase of equipment, which debt is secured, but whether to its full extent, or not, is unclear. Even if each was included in the creditor count, Richards would still lack twelve creditors. Therefore, for purposes of this motion, it is unnecessary to determine the status of these creditors under § 303. Accordingly, the Court is assuming, without deciding, that all three are creditors for purposes of § 303(b).

### E. *DRESCHER, DORKIN, KAPLAN & CO.*

██ The claim of this company for $10,300 is challenged on the ground that the

**3.** There are other differences between the Bankruptcy Code and the Bankruptcy Act that bear upon the filing of an involuntary petition in bankruptcy, but they are not helpful either way. The Code, by defining a "creditor" as any entity that holds a claim (§ 101(9)), and then defining "claim" (§ 101(4)) in very expansive language, appears to increase the potential number of creditors who may file an involuntary petition. The effect on the filing of an involuntary petition was probably, however, an unintended by-product of changes made for other purposes. There are certain differences in language between § 303 of the Code, and § 59 of the Act, the reasons for which are obscure. Left uncertain, for example, is to what extent the possession of security disqualifies a creditor from being included in the creditor count. These changes do not affect the conclusions reached in this Opinion.

member of the firm on whose services the claim is based is an insider. Mr. Kaplan acts as the accountant for the debtor, and is privy to much confidential information. In the view of the Court, however, that does not make him an insider within the meaning of the Bankruptcy Code. The term "insider" is defined in § 101(25). The purpose of the definition is to reach persons, like directors, stockholders, alter egos, and related corporations, who are part of management, rather than true creditors. Accordingly, Drescher, Dorkin, Kaplan & Co. is properly considered a creditor of the debtor for present purposes.

### F.   CARTE   BLANCHE;   TRANS WORLD AIRLINES, INC.

■ The Court has considered the record with respect to Carte Blanche and Trans World Airlines, Inc. The amount shown as owed Carte Blanche ($864.62) is the amount for which Carte Blanche has invoiced Richards, and which has not been paid because Richards is awaiting further documentation.

Trans World Airlines is owed $1,675 for services furnished Richards.

Neither amount is of the *de minimus* category; both companies, therefore, should be included in the creditor count.

### CONCLUSION

For the foregoing reasons, this Court is denying Richards' motion to dismiss the involuntary petition.

Richards has also moved, in the alternative, for other relief and has requested that the Court schedule a hearing with respect to the need for security.

A preliminary hearing will be held on April 29, 1981 at 2:00 p. m. in Courtroom 304, United States Courthouse, 225 Cadman Plaza East, Brooklyn, New York 11201, to schedule further proceedings herein.

The foregoing constitutes the Order of the Court.