In the Matter of SKYE MARKETING CORP., Alleged Debtor.

Bankruptcy No. 881–80250–17.

United States Bankruptcy Court, E. D. New York.

June 17, 1981.

Leinwand, Maron, Hendler & Krause, New York City by Robert R. Leinwand and Lawrence E. Shiff, New York City, for petitioning creditor.

Fensterheim & Fensterheim, New York City by Asher Fensterheim, New York City, for alleged debtor.

BORIS RADOYEVICH, Bankruptcy Judge.

On December 4, 1980, Or Da Industries, Ltd. filed an involuntary petition which seeks an order for relief under chapter 7 of the Bankruptcy Code against Skye Marketing Corporation, the alleged debtor. In the creditor's petition, it is alleged that Skye Marketing has fewer than twelve creditors, and that the petitioning creditor holds a claim of $178,409.62 which is not contingent as to liability. Thereafter, the alleged debtor moved this Court for an order dismissing the creditor's petition on the ground that a petition of a single creditor is not sufficient to invoke the Court's jurisdiction where, as is claimed here, the alleged debtor has 12 or more creditors on the date of the petition. An affidavit accompanying the alleged debtor's motion claimed twenty-four such creditors, as follows:

| NAME OF CREDITOR | AMOUNT OWED |
|---|---|
| 1. Trans-World Dist. Serv. | $2,914.00 |
| 2. Creative Guidance | 150.00 |
| 3. We Try Harder, Inc. | 341.22 |
| 4. Pitney-Bowes | 127.59 |
| 5. United Parcel Serv. | 240.24 |
| 6. New York Telephone | 155.25 |
| 7. U.S. Life | 152.85 |
| 8. Blue Cross Blue Shield | 75.16 |
| 9. Toy Mfg'ers of America | 275.00 |
| 10. Cliff Ashton | 75.35 |
| 11. Paul Mosenson | 79.21 |
| 12. Eisner, Cohn & Assocs. | 301.14 |
| 13. Ed Waxman | 118.73 |
| 14. Mark Gold | 55.85 |
| 15. Bernard Seegul | 28.20 |
| 16. Scholar's Choice | 1,168.20 |
| 17. Continental Assurance Co. | 29.64 |
| 18. U.S. Gov't (FICA, FUTA & WH) | 813.36 |
| 19. N.Y. State (WH & Unemp) | 322.40 |
| 20. Michael Weisman | 110.05 |
| 21. Bob Perilla Assocs. | 750.00 |
| 22. Intercont'l Bur. of Transl. & Interp., Inc. | 480.00 |
| 23. CMNY Capital | 201,374.99 |
| 24  Or Da Industries | 178,409.62 |

The motion is opposed with the argument that the bulk of the creditors claimed by Skye are holders of small, recurring claims and should not be counted in determining

whether the requisite number of petitioners have joined in the petition. A hearing was begun on March 19 and concluded on April 15, 1981. For reasons which follow, the Court holds that the alleged debtor's motion should be denied.

### Findings of Fact

1. Skye Marketing Corporation (the "alleged debtor") is a corporation organized and existing under the laws of the State of New York. Within the past 180 days, its principal place of business has been located at 100 Soundview Drive, Port Washington, New York.

2. On December 4, 1980, Or Da Industries, Ltd. (the "petitioning creditor") filed an involuntary petition which prays for an order for relief against the alleged debtor under chapter 7 of the Bankruptcy Code.

3. On the date of the petition herein, the sum of $2,914.93 was due and owing by the alleged debtor to Trans-World Distribution Services, Inc., as a result of various goods and services being provided to the alleged debtor in November of 1980. Tr. of April 15, 1981, at 15–16, 37; Debtor's Ex. 3. A handwritten notation on an invoice kept by the alleged debtor in the ordinary course of its business, and introduced into evidence in this proceeding, indicates that the alleged debtor paid all or a part of the balance due to this creditor on January 2, 1981. Debtor's Ex. 3.

4. On the date of the petition herein, the alleged debtor was indebted to Creative Guidance for rent for the first four days of the month of December, 1980. The monthly rent of $150.00 was not due to be paid until December 15, 1980. Tr. of March 19, 1981, at 26–27; Tr. of April 15, 1981 at 46–47. There is nothing in the record which would indicate that the alleged debtor paid this balance to Creative Guidance after the petition was filed.

5. On the date of the petition herein, the sums of $101.65 and $138.59 were due and owing by the alleged debtor to United Parcel Service for services rendered prior to the petition. Tr. of April 15, 1981, at 42; Debtor's Ex. 7. Handwritten notations on invoices kept by the alleged debtor in the ordinary course of its business, and introduced into evidence in this proceeding, indicate that these balances were paid by the alleged debtor on December 10, 1980, and December 19, 1980, respectively.

6. On the date of the petition herein, the sum of $847.55 was due and owing by the alleged debtor to We Try Harder, Inc. Of this total, the sum of $341.22 represented a monthly charge for December of 1980, in accordance with the terms of the alleged debtor's automobile lease agreement with We Try Harder, Inc. Debtor's Ex. 5. Invoices and letters kept in the ordinary course of the alleged debtor's business and introduced into evidence in this proceeding indicate that the alleged debtor paid the sum of $341.22 on December 19, 1980, and a like sum on January 22, 1981, for monthly rental for December, 1980, and January of 1981. Debtor's Exs. 4, 5. The balance of approximately $500.00 was paid to this creditor by the alleged debtor after the date of the petition. Tr. of April 15, 1981 at 40.

7. On the date of the petition herein, a debt of $127.59 was due and owing by the alleged debtor to Pitney-Bowes for monthly meter rental for a period of three months prior to the petition. There is nothing in the record of this proceeding which would indicate that any of the balance attributable to pre-petition charges has been paid by the alleged debtor. Tr. of April 15, 1981, at 41–42; Debtor's Ex. 6.

8. On the date of the petition herein, a sum of at least $112.76 was due and owing by the alleged debtor to the New York Telephone Company on account of long distance telephone calls placed, and telephone service and equipment charges incurred, prior to the petition. Tr. at April 15, 1981, at 32–37; Debtor's Ex. 2. Handwritten notations on a bill kept by the alleged debtor in the ordinary course of its business, and introduced into evidence in this proceeding, indicate that the sum of $155.28 was paid to the New York Telephone Company on January 2, 1981. Included in this sum are charges for monthly service on equipment which accrued during the period December 1, 1980 through December 31, 1980.

9. On the date of the petition herein, the alleged debtor owed to the United States Life Insurance Company the sum of $152.85 for life insurance, and accident and health insurance, for Michael Weisman, the president of the alleged debtor. A premium statement kept by the alleged debtor in the ordinary course of its business, and introduced into evidence in this proceeding, indicates that this sum was due to be paid on December 15, 1980, in consideration of insurance coverage for the month of December, 1980. This statement further indicates that if insurance coverage should terminate for any reason, including non-payment of the premium, the alleged debtor would be liable for all premiums due and unpaid while the insurance remained in force. The notation on the face of this premium statement indicates that the alleged debtor paid the balance due to the United States Life Insurance Company on December 19, 1980. Debtor's Ex. 8.

10. A statement from Blue Cross Blue Shield of Greater New York, that was kept by the debtor in the ordinary course of business and introduced into evidence in this proceeding, indicates that the alleged debtor was billed in the amount of $75.16 for unspecified insurance coverage for the billing period January 1, 1981, to April 1, 1981. This statement further indicates that the alleged debtor paid this sum to this creditor on January 2, 1981. Creditor's Ex. E; Tr. of March 19, 1981, 33–35.

11. On the date of the petition herein, the alleged debtor held a membership in the Toy Manufacturers of America, a trade association. The alleged debtor's dues for the fiscal year ending October 31, 1981 were $1,100.00. An invoice kept by the alleged debtor in the ordinary course of its business, and introduced into evidence in this proceeding, indicates that this association billed its members on a quarterly basis and that the only amount which was owed by the alleged debtor was for dues of $275.00 for the second quarter of 1981, i. e., February 1, 1981 to April 30, 1981. A notation on the face of this invoice indicates that the alleged debtor paid this amount on February 11, 1981. Creditor's Ex. B; Tr. of March 19, 1981 at 18–20.

12. Prior to the date of the petition herein, the alleged debtor utilized the services of the following individuals as commissioned sales agents: Cliff Ashton, Paul Mosenson, Ed Waxman, Mark Gold, Bernard Seegul, and Eisner, Cohn and Associates. The alleged debtor agreed to pay these sales agents in amounts equal to specified percentages of sales arranged by them when, as and if the purchasers paid the alleged debtor for these sales. Tr. of March 19, 1981, at 42–46.

13. On the date of the petition herein, the alleged debtor owed to Cliff Ashton the sum of $54.16 for commissions on sales which were made during the month of November, 1980. As of the date of the petition, this liability was contingent insofar as the purchasers had not paid the alleged debtor for the goods sold. Creditor's Ex. K.

14. As of the date of the petition herein, the alleged debtor was indebted to Paul Mosenson in a sum of not less than $76.67, for sales arranged by Mr. Mosenson during the months of April and November of 1980. This liability was contingent as of the date of the petition insofar as the purchasers had not paid the alleged debtor for these sales. Creditor's Ex. L.

15. On the date of the petition herein, the alleged debtor was indebted to Eisner, Cohn and Associates in the amount of $632.04 for commissions earned on sales which took place during various months of the year 1980 to and including November, 1980. As of the date of the petition, this liability was contingent insofar as the purchasers had not paid the alleged debtor for these sales. Creditor's Ex. J.

16. As of the date of the petition herein, the alleged debtor was indebted to Ed Waxman in the sum of $1.86 for a commission earned on a sale completed in October, 1980. In addition, the alleged debtor was indebted to Ed Waxman in the sum of at least $55.25 on account of sales which took place during the month of November, 1980; this liability remained contingent as of the date of the petition, insofar as the purchasers had not

paid the alleged debtor for the sales at such time. Creditor's Ex. I. On January 15, 1981, the alleged debtor paid the balance due to Mr. Waxman. Creditor's Ex. I.

17. As of the date of the petition herein, the alleged debtor was indebted to Mark Gold in the sum of $55.85, for commissions earned during the months of October and November of 1980. This liability was contingent as of the date of the petition insofar as the purchasers had not paid the alleged debtor by such time. In February of 1981, the alleged debtor paid the balance due to Mr. Gold. Tr. of April 15, 1981, at 28–29.

18. As of the date of the petition herein, the alleged debtor was not indebted to Bernard Seegul. Tr. of April 15, 1980, at 29–30.

19. As of the date of the petition herein, the alleged debtor was indebted to Scholar's Choice in the amount of $1,168.20 for advertising space in this creditor's catalogue. Tr. of March 19, 1981, at 35–38; Tr. of April 15, 1981, at 51.

20. There is no credible evidence that would indicate that the alleged debtor was indebted to Continental Assurance Company on the date of the petition herein. *See* Tr. of March 19, 1981, at 38–40; Creditor's Ex. F.

21. On the date of the petition herein, the alleged debtor had one or more employees on its payroll. Tr. of April 15, 1980 at 47–48.

22. On the date of the petition herein, the alleged debtor was obligated to pay federal insurance contributions on employees wages which had been paid during calendar year 1980. A return was not required to be filed, and this tax was not due to be paid, until January of 1981. Tr. of March 19, 1981 at 22–23; Tr. of April 15, 1981 at 48–49, 61–63.

23. On the date of the petition herein, the alleged debtor was obligated to pay federal unemployment and withholding taxes on the wages of employees who were paid during a period ending on December 3, 1980. Tr. of March 19, 1981 at 22–23; Tr. of April 15, 1981 at 47–49, 61–63.

24. On the date of the petition herein, the alleged debtor was obligated to pay New York State income withholding taxes for wages paid to employees during the first four days of December of 1980. Tr. of March 19, 1981 at 24–25; Tr. of April 15, 1981 at 49; Debtor's Ex. 1.

25. On the date of the petition herein, the alleged debtor was obligated to pay New York State unemployment taxes for the final quarter of calendar year 1980. Tr. of March 19, 1981 at 24–25; Debtor's Ex. 1.

26. On the date of the petition, the foregoing tax liabilities to the federal government totaled approximately $391.00. Tr. of April 15, 1981, at 49. The foregoing tax liabilities to the state government totaled approximately $322.00.

27. On December 10, 1980, the alleged debtor made deposits in an amount in excess of $800.00 for the foregoing tax liabilities. Tr. of April 15, 1981, at 63.

28. On the date of the petition herein, the alleged debtor was obligated to pay its president, Michael Weisman, the sum of $110.05 for various expenditures made by Mr. Weisman on behalf of the corporation. Debtor's Ex. 1; Tr. of March 19, 1981 at 20–21.

29. On the date of the petition herein, the alleged debtor was obligated to pay Bob Perilla Associates the sum of $750.00 for public relations services. Tr. of March 19, 1981 at 41–42; Creditor's Ex. G; Debtor's Ex. 1.

30. The Intercontinental Bureau of Translators and Interpreters, Inc., was not a creditor of the alleged debtor on the date of the petition. Tr. of April 15, 1981 at 30.

31. On the date of the petition herein, the alleged debtor owed to C.M.N.Y. Capital Corporation the sum of $201,374.99. Debtor's Ex. 1.

32. It is not disputed, and the Court finds, that Or Da Industries, Ltd. the petitioning creditor herein, was the holder of a non-contingent claim against the alleged debtor on the date of the petition herein.

33. On the date of the petition herein, the Meridith Agency was the holder of a claim in the amount of $267.00 for a policy of workmen's compensation and disability insurance effective from July 15, 1980 to July 15, 1981, which was issued by the Peerless Insurance Company. Tr. of March 19, 1981 at 38–41; Creditor's Ex. F. A handwritten notation on the face of a bill from this creditor, which was kept in the ordinary course of business and introduced into evidence in this proceeding, indicates that the alleged debtor paid this creditor in full on March 3, 1981. Creditor's Ex. F.

Conclusions of Law

1. On the date of the petition herein, the following fifteen entities held claims against the alleged debtor which were not contingent as to liability: Trans-World Distribution Services, Inc., Creative Guidance, United Parcel Service, We Try Harder, Inc., Pitney-Bowes, the New York Telephone Company, the United States Life Insurance Company, Ed Waxman, the United States government, the New York State government, Michael Weisman, Bob Perilla Associates, the C.M.N.Y. Capital Corporation, Or Da Industries, Ltd., and the Meridith Agency.

2. Trans-World Distribution Services, Inc., United Parcel Service, We Try Harder, Inc., the New York Telephone Company, the United States Life Insurance Company, Ed Waxman, the United States government, the New York State government, and the Meridith Agency are recipients of transfers which would be voidable under 11 U.S.C. section 549 in the event that an order for relief is made against the alleged debtor herein. As such, these creditors may not be counted in determining whether there existed fewer than twelve claimants against the alleged debtor within the definition of 11 U.S.C. section 303(b)(2).

3. Michael Weisman is an insider within the meaning of 11 U.S.C. section 303(b)(2). As such, he should not be counted as the holder of a claim for purposes of determining whether there were fewer than twelve claimants within the definition of 11 U.S.C. section 303(b)(2).

4. Cliff Ashton, Paul Mosenson, Ed Waxman, Mark Gold, and Eisner, Cohn and Associates held claims against the alleged debtor which, on the date of the petition herein, were contingent as to liability within the definition of 11 U.S.C. section 303(b). As such, they should not be counted as holders of claims in determining the sufficiency of this single-creditor petition.

5. The following entities did not hold claims against the alleged debtor on the date of the petition herein, although each was listed as holding a pre-petition claim in the affidavit accompanying the alleged debtors motion to dismiss the petition: Blue Cross Blue Shield of Greater New York, Toy Manufacturers of America, Bernard Seegul, the Continental Assurance Company, and the Intercontinental Bureau of Translators and Interpreters, Inc.

6. On the date of the petition herein, the following six entities held claims against the alleged debtor aggregating at least $5,000.00 which may be counted in determining the sufficiency of this single creditor petition. Creative Guidance, Pitney-Bowes, Scholar's Choice, Bob Perilla Associates, the C.M.N.Y. Capital Corporation, and Or Da Industries, Ltd.

7. The alleged debtor's motion to dismiss the petition should be denied.

Memorandum

The alleged debtor has questioned the sufficiency of this single-creditor petition on grounds set forth in section 303 of the Bankruptcy Code. Subdivision (b) of this section provides (in pertinent part) that

[a]n involuntary case is commenced by the filing with the bankruptcy court of a petition under chapter 7 or 11 of this title—

(1) by three or more entities, each of which is either a holder of a claim against such person that is not contingent as to liability or an indenture trustee representing such a holder, if such claims aggregate at least $5,000 more than the value of any lien on property of the debtor securing such claims held by the holders of such claims;

(2) if there are fewer than 12 such holders, excluding any employee or insider of such person and any transferee of a transfer that is voidable under section 544, 545, 547, 548, 549, or 747(a) of this title, by one or more of such holders that hold in the aggregate at least $5,000 of such claims. . . .

11 U.S.C. § 303(b). The alleged debtor contends that on the date of the involuntary petition (which was December 4, 1980), twenty-four entities held claims which met the criteria set forth in subsection (b)(2): as such, the alleged debtor should be permitted to avoid the entry of an order for relief. This Court disagrees.

The detailed rules governing the counting of creditors have their origin in policy considerations which, to an extent, are conflicting. One such policy is based upon the fear that involuntary bankruptcy proceedings might be used by one or two recalcitrant creditors as a means of harassing an honest debtor. Populist Members of Congress, in debating the bill which was later adopted as the Bankruptcy Act of 1898, decried the involuntary bankruptcy provisions as an "engine of oppression" and "intended to bind hand and foot the debtors of this country and place them in the vise-like grip of the greedy cormorants of the country." 31 Cong.Rec. 1803, 1851 (remarks of Congressmen Henry and Sparkman), *quoted in In re Gibraltor Amusements, Ltd.*, 291 F.2d 22, 27 (2d Cir. 1961) (Friendly, J., dissenting). In order to allay these fears, the requirement of three petitioners was adopted as a general rule, and single creditor petitions were permitted only in cases in which there were fewer than twelve creditors. Another fear was the possibility that the threat of an involuntary proceeding would be used to compel the debtor to make preferential pay-

ments to one or two litigious creditors. A competing consideration was the avoidance of collusion between the insolvent debtor and friendly creditors through which an involuntary petition might be defeated. To be sure, a creditor who is being paid lacks an incentive to join an involuntary proceeding because of the risk that a portion of his claim would be sought as a preference by the trustee while the balance of his claim would be discharged in bankruptcy. Insiders who have become creditors of their businesses are deterred by similar considerations from joining in an involuntary petition. Indeed, in considering the statutory predecessor of subsection (b)(2),[1] it was said that

> [t]he detailed ground rules for "counting creditors," laid down by § 59, sub. e, indicate that the principal Congressional fear of abuse was not that a debtor would be too easily petitioned into bankruptcy—rather that through connivance with friendly creditors that insolvent debtor might be able unfairly to hamstring one or two large creditors. . .

*Id.* at 25 (citation omitted). Thus, the compromise was to require three petitioners to join when the eligible claimants number more than twelve, a single petitioner when they do not, and exclude from the class of claimants who may be counted those who lack an incentive to join an involuntary petition.

Congress continued to adhere to this compromise in adopting the Bankruptcy Reform Act of 1978. Those who would be deterred from joining the effort to petition a debtor into bankruptcy by their status as preferred creditors are not to be counted according to the dictates of section 303(b)(2)

1. Section 59(e) of the Bankruptcy Act, 11 U.S.C. § 95(e), provided as follows:

    In computing the number of creditors of a bankrupt for the purpose of determining how many creditors must join in the petition, there shall not be counted (1) such creditors as were employed by the bankrupt at the time of the filing of the petition; (2) creditors who are relatives of the bankrupt or, if the bankrupt is a corporation, creditors who are stockholders or members, officers or members of the board of directors or trustees or of other similar controlling bodies of such bankrupt corporation; (3) creditors who have participated, directly or indirectly, in the act of bankruptcy charged in the petition; (4) secured creditors whose claims are fully secured; and (5) creditors who have received preferences, liens, or transfers void or voidable under this Act.

of the Code. Moreover, the Code has broadened the class of persons who may be liable as preferred creditors [2] because of their receipt of payments made by the debtor after the petition but prior to the entry of an order for relief: any claimant who is paid for a pre-petition debt after the petition is filed may be liable to turn the payment over to the trustee. Code section 549 provides in this regard that

(a) [e]xcept as provided in subsections (b) and (c) of this section, the trustee may avoid a transfer of property of the estate—

(1) that occurs after the commencement of the case; and

(2)(A) that is authorized under section 303(f) or 542(c) of this title; or

(B) that is not authorized under this title or by the court.

(b) In an involuntary case, a transfer that occurs after the commencement of such case but before the order for relief is valid against the trustee to the extent of any value, including services, but not including satisfaction or securing of a debt that arose before the commencement of the case, given after the commencement of the case in exchange for such transfer, notwithstanding any notice or knowledge of the case that the transferee has. . . .

11 U.S.C. § 549(b). Although the holders of contingent claims could be counted in determining the sufficiency of a single creditor petition under section 59 of the Bankruptcy Act, the Bankruptcy Code also has changed this rule. This change is emphasized by the repeated use in Code section 303(b) of the phrase "such claims" rather than merely "claims." *Cf.* 11 U.S.C. § 101(4)(a) (" 'claim' means right to payment, whether or not such right is . . . contingent"). To be sure,

the statute is unambiguous. Moreover, the Court may not infer from the legislative history's silence on this issue that no change from prior law was intended: this history also is virtually silent about the new law's requirement that the claims of petitioners must be $5,000.00 in excess of any security which they hold. *See* H.R.Rep.No.95–595, 95th Cong., 1st Sess. (1977) 321; S.Rep.No. 95–989, 95th Cong., 2d Sess. (1978) 33, U.S. Code Cong. & Admin.News 1978, p. 5787.

■ On December 4, 1980, the date of the petition, some eighteen entities held claims against the alleged debtor. Included among these eighteen are Creative Guidance, the alleged debtor's landlord, which was due to be paid monthly rent for December on December 15, 1980. The petitioning creditor argues in the alternative either that Creative Guidance did not hold a claim against the alleged debtor since its rent claim was not yet due to be paid, or that its claim was contingent for this reason. This Court disagrees. By its occupancy of the premises for the first four days of the month, the alleged debtor became liable for rent, *see* N.Y.Real Prop.Law § 220 (McKinney 1968), and perhaps for a full month's rent or more, *see id.*, §§ 232–b, –c (McKinney 1968). Moreover, the fact that this debt was not due to be paid until a date after the petition was filed does not render the landlord's claim contingent within the meaning of the Code section 303(b): a time contingency alone will not prevent a claim from being counted, since it is a contingency which is certain to occur. *See In re All Media Properties, Inc.,* 5 B.R. 126, 6 B.C.D. 586 (Bankr.Ct.S.D.Tex.1980). *See also In re Mullings Clothing Co.,* 238 F. 58 (2d Cir. 1916); *In re Myers,* 31 F.Supp. 636 (E.D.N. Y.1940). The petitioning creditor's similar argument concerning the debts due to the

---

**2.** Section 70(d) of the Bankruptcy Act, 11 U.S.C. § 110(d), provided (in pertinent part):

After bankruptcy and either before adjudication or before a receiver takes possession of the property of the bankrupt, whichever first occurs—

(1) A transfer of any of the property of the bankrupt, other than real estate, made to a

person acting in good faith shall be valid against the trustee if made for a present fair equivalent value or, if not made for a present fair equivalent value, then to the extent of the present consideration actually paid therefor, for which amount the transferee shall have a lien upon the property so transferred. . . .

United States and State of New York for payroll and unemployment taxes also must be rejected.[3] The claims of Cliff Ashton, Paul Mosenson, Ed Waxman,[4] and Eisner, Cohn and Associates, however, should be excluded as contingent claims since the alleged debtor was liable to pay commissions to these salesmen only if and when it was paid by the purchasers; at the date of the petition, it had not been paid.

■ The claims of the following nine entities must be excluded because the alleged debtor paid these claimants for pre-petition debts after the petition was filed: Trans-World Distribution Services, Inc.; United Parcel Service; We Try Harder, Inc.; New York Telephone Co.; United States Life Insurance Co.; Ed Waxman; the United States; the State of New York; and, the Meridith Agency. Accordingly, each of these claimants is the recipient of a post-petition preference as set forth in Code section 549(b). *See In re Blaine Richards &*

---

**3.** It is well settled, contrary to another argument raised by the petitioner, that taxes are claims to be counted in determining the number of claims which existed on the date of the petition. *In re Independent Laundry, Inc.,* 10 F.Supp. 649 (E.D.N.Y.1935). *See also W. H. H. Chamberlin, Inc. v. Andrews,* 299 U.S. 515, 57 S.Ct. 122, 81 L.Ed. 380 (1936), *aff'g* 271 N.Y. 1, 2 N.E.2d 22 (1935) (F.I.C.A. and unemployment taxes); *U. S. v. Childs,* 266 U.S. 304, 308, 45 S.Ct. 110, 111, 69 L.Ed. 299 (1924); *In re Wm. Akers, Jr., Co.,* 121 F.2d 846 (3d Cir. 1935) (state unemployment contributions).

**4.** A debt of $1.86 to Ed Waxman was not contingent on the date of the petition because the purchaser of goods sold through his agency had paid the alleged debtor by this time. However, as discussed *infra,* this claim should not be counted since Mr. Waxman was paid for this claim after the date of the petition. *See* 11 U.S.C. § 549(b).

**5.** The exclusion of holders of small, recurring claims in determining the sufficiency of single creditor petitions is a judicially developed rule which was applied as a supplement to the creditor counting provisions of section 59(e) of the Bankruptcy Act. Undoubtedly, the rule was developed in order to mitigate the harshness of the statutory rules. In an opinion decided under the Bankruptcy Code, Judge Cecelia Goetz of this district reluctantly applied the rule by excluding the holder of a claim totaling $19.00 under the principle *de minimis non curat lex.*

---

*Co., Inc.,* 10 B.R. 424, 7 B.C.D. 543 (Bankr.E. D.N.Y.1981).

Michael Weisman may not be counted as the holder of a claim against the alleged debtor because, as its president, he is an "insider" within the meaning of Code sections 101(25) and 303(b)(2). *In re Blaine Richards & Co., Inc.,* 10 B.R. 424, 7 B.C.D. 543 (Bankr.E.D.N.Y.1981).

It appears that on the date of the petition, only six entities held claims which may be counted under the creditor counting rules of Code section 303. This renders it unnecessary for this Court to consider the petitioning creditor's primary argument that the holders of small, recurring claims should not be counted in determining the sufficiency of a single creditor petition.[5]

Accordingly, the alleged debtor's motion to dismiss the petition should be and hereby is denied.

It is SO ORDERED.

*In re Blaine Richards & Co., Inc.,* 10 B.R. 424, 7 B.C.D. 543 (Bankr.E.D.N.Y.1981). The leading Bankruptcy Act cases in which the rule is applied are *Matter of Blount,* 142 F. 263 (E.D.Ark. 1906), and *Denham v. Shellman Grain Elevator, Inc.,* 444 F.2d 1376 (5th Cir. 1971). Each of these cases echo Judge Goetz's remarks that the exclusion of the holders of de minimis claims is consistent with Congressional intent. Other courts have disapproved this rationale. The ninth circuit, in *Matter of Okamoto,* 491 F.2d 496 (9th Cir. 1974), refused to "engraft an additional exception to the Act" in view of the "unambiguous Congressional direction" on the procedure to be followed in counting creditors. 491 F.2d at 498. *See also Grigsby-Grunow Co. v. Hieb Radio Supply Co.,* 71 F.2d 113 (8th Cir. 1934). This Court believes that the judicially developed exception no longer is necessary, and that the holders of small recurring claims should be counted in determining the requisite number of petitioners under the Code: if they are paid their claims on a regular basis, it is likely that most would be excluded from the computation in any event by Code section 303(b)(2) as recipients of involuntary gap preferences under Code section 549(b). If they are not so excluded, they should be counted. Indeed, the express language of section 303(b), and the broad definition of "claim" which is set forth in section 101(4) of the Code, clearly and unambiguously include the holders of small recurring claims.