## In re COLESVILLE MEDICAL CENTER LIMITED PARTNERSHIP.

### Bankruptcy No. 82–1–0465.

United States Bankruptcy Court,
D. Maryland,
at Rockville.

May 10, 1982.

Brian R. Seeber, Samuel M. Greenbaum, Washington, D. C., for alleged debtor.

Frank A. Lafalce, Jr., Towson, Md., for petitioning creditor Northern Chesapeake Builders Corp.

Thomas J. Walker, Jr., Rockville, Md., for petitioning intervenor Equitable Sav. & Loan Ass'n.

## MEMORANDUM OPINION

PAUL MANNES, Bankruptcy Judge.

On March 29, 1982, petitioner Northern Chesapeake Builders Corporation filed an Involuntary Petition under Chapter 11 alleging that the debtor is not paying its debts as such debts become due, and that the debtor has fewer than 12 holders of claims against it that are not contingent as to liability and that aggregate at least $5,000.00 more than the value of any lien on the property of the debtor securing such claims held by the holders of such claims," and that the petitioning creditor holds a claim against the alleged debtor for labor and materials furnished in the amount of $48,474.60 which is not contingent as to liability. On March 30, 1982, the debtor filed an Application for *Ex Parte* Relief so as to permit a foreclosure sale to go forward against it on that day. After hearing testimony and argument of counsel, the Application was denied. Thereafter, the alleged debtor moved this court for an order dismissing the creditor's petition on the ground that a petition of a single creditor is not sufficient to invoke the court's jurisdiction where, as Colesville Medical Center Limited Partnership claims here, the al-

leged debtor "has fifteen (15) creditors who are not insiders or employees of the debtor, and who hold non-contingent and unsecured claims against the debtor." Debtor filed a list of contingent and unsecured claims as follows:

| | |
|---|---|
| American Health Associates, Inc. | Undetermined |
| Montgomery County, Maryland | $14,065.19 |
| A. Kent Ballard | Disputed |
| Custom Environmental Service, Inc. | $ 550.00 |
| Enterprise Answering Service, Inc. | $ 20.00 |
| Louis C. Grossberg Company Certified Public Accountants | $ 3,500.00 |
| Jay N. Lazrus, Esq. | $ 228.38 |
| Sherman Lazrus | Undetermined |
| Northern Chesapeake Builders Corporation | Disputed |
| Otis Elevator Company | $ 257.27 |
| Potomac Electric Power Company | $ 7,500.00 |
| Randall S. Sandstrom | $ 70.00 |
| United Disposal Corporation | $ 65.00 |
| Washington Suburban Sanitary Commission | $ 20.00 |
| Hardin E. Ross, III | $ 479.00 |

At trial, one of the principals of the alleged debtor testified concerning two other possible creditors, Morris Mill Manor, Inc., and Rouse Insurance, Inc.

The Motion was opposed with the argument that various alleged creditors were insiders or holders of small recurring claims that should not be counted in determining whether the required number of petitioners have joined in the petition. A hearing took place on March 21, 1982, and the court rules that the Motion to Dismiss should be denied.

## FINDINGS OF FACT

Colesville Medical Center is a Limited Partnership existing under the laws of the State of Maryland. Within the past 180 days its principal place of business has been located at 13321 New Hampshire Avenue, Silver Spring, Maryland.

The principal business of the debtor is the operation of the Colesville Medical Center. This is a free standing structure that was built to be sold under a condominium regime.

The Colesville Medical Center Limited Partnership is owned 10 percent by its general partner, Colesville Medical Center, Inc., and the remaining 90 percent equity interest is owned by Sherman Lazrus, Kent Ballard, and Hardin E. Ross, III. The 90 percent interest is owned by these individuals 45 percent, 45 percent and 10 percent, respectively. The corporate stock of the Colesville Medical Center, Inc., is owned in the same ratio of 45 percent, 45 percent, and 10 percent.

Jay N. Lazrus is the son of Sherman Lazrus.

Pursuant to the agreement among Messrs. Sherman Lazrus, Hardin Ross, and Kent Ballard, control of the partnership and the corporation is vested in all three. Each has an absolute veto over the activities of the corporation and the partnership. All activities of the partnership and the corporation are dependent upon the unanimous concurrence of these three individuals. Each of the three partners may block any corporate or partnership act.

While the debtor pleaded in its Amended Motion to Dismiss the Involuntary Petition that the real property owned by it has been appraised at $2,300,000.00, testimony was presented at the hearing that the value of the subject property in its present condition on a competitive market is $1,950,000.00.

On the date of the petition herein:

(1) the sum of $771.81 was due and owing by the alleged debtor to the Otis Elevator Company;

(2) more than $10,000.00 was due and owing by the alleged debtor to the Potomac Electric Power Company on account of 18 separate invoices;

(3) the sum of $14,065.19 was due and owing by the alleged debtor to Montgomery County, Maryland, on account of state, county, and municipal taxes for the fiscal year beginning July 1, 1981;

(4) the alleged debtor was not indebted to the United Disposal Corporation. Debtor's Exhibit 4 was an invoice of United Disposal Corporation for the period beginning April 1, 1982;

(5) the alleged debtor was not indebted to Enterprise Answering Service, Inc. Debtor's Exhibit 5 was an invoice for the month of April, 1982. The March balance had been paid on March 16, 1982;

(6) the alleged debtor was indebted to Louis C. Grossberg Company, Certified Public Accountants in the sum of $3,500.00;

(7) the sum of $70.00 was due and owing by the alleged debtor to Colesville Snow Removal;

(8) the sum of $20.01 was due and owing by the alleged debtor to the Washington Suburban Sanitary Commission;

(9) the alleged debtor was indebted to Custom Environmental Service, Inc., in the sum of $550.00;

(10) the alleged debtor was indebted to Sherman Lazrus and Charlotte Lazrus, his wife, in the sum of $195.00 on account of money advanced for the partnership to pay the United Disposal Corporation. There was testimony that substantially more money had been advanced by Sherman Lazrus on behalf of the corporation. Sherman Lazrus and Charlotte Lazrus are insiders and any debt to them may not be included for counting purposes under 11 U.S.C. § 303(b)(2);

(11) the alleged debtor was indebted to Jay N. Lazrus for legal services rendered in the sum of $288.38. The debt to Jay N. Lazrus is a debt to an insider in that Jay N. Lazrus is a relative of a person in control of the debtor;

(12) the petitioner, Northern Chesapeake Builders Corporation, was the holder of a claim of at least $5,000.00 more than the value of any lien on the property of the debtors securing said claim. Said claim is disputed;

(13) the alleged debtor was indebted to Hardin E. Ross, III in the sum of $479.00. Hardin E. Ross, III is likewise an insider.

The debtor failed to sustain its burden as to the existence of alleged debts due Rouse Insurance, Inc., and Morris Mill Manor, Inc.

## CONCLUSIONS OF LAW

On the date of the petition herein, the following entities held claims against the alleged debtor which were not contingent as to liability:

Otis Elevator Company

Potomac Electric Power Company

Montgomery County, Maryland

Louis C. Grossberg Company

Colesville Snow Removal

Washington Suburban Sanitary Commission

Custom Environmental Service, Inc.

Northern Chesapeake Builders Corporation

A. Kent Ballard, Jay N. Lazrus, Sherman Lazrus, and Hardin E. Ross, III are insiders within the meaning of 11 U.S.C. § 303(b)(2). As such, they are not to be counted as the holders of claims for purposes of determining whether there were fewer than 12 claimants within the definition of 11 U.S.C. § 303(b)(2).

The following entities did not hold claims against the alleged debtor on the date of the petition herein, although each was listed as holding a pre-petition claim:

Enterprise Answering Service, Inc.

United Disposal Corporation

The alleged debtor's Amended Motion to Dismiss the Petition should be denied.

## MEMORANDUM

Considerable time was spent at the hearing of this matter with respect to whether or not holders of small recurring claims should be considered in determining the number of creditors in existence as of the date of filing. Petitioner relies upon *In re Blaine Richards & Co., Inc.*, 7 B.C.D. 543, 10 B.R. 424, 4 C.B.C.2d 275 (Bkrtcy.E.D.N.Y. 1981). This case was scrutinized by Judge Radoyevich in the *Matter of Skye Marketing Corp.*, 4 C.B.C. 2nd 954, 964–965, 11 B.R. 891, 8 B.C.D. 100 (Bkrtcy.1981), C.C.H. B.L.D. ¶ 68088. While this matter need not be decided at this stage of the proceeding, the court notes the *Matter of Okamoto*, 491 F.2d 496 (9th Cir. 1974), presenting a contrary view.

The claims of the Lazruses, father and son, and Messrs. Ross and Ballard are not counted because, as stated above, the individuals are insiders and therefore need not be counted under § 303(b)(2). An insider is defined in 11 U.S.C. § 101(25)(C):

(C) if the debtor is a partnership—

(i) general partner in the debtor;

(ii) relative of a general partner in, general partner of, or person in control of the debtor;

(iii) partnership in which the debtor is a general partner;

(iv) general partner of the debtor; or

(v) person in control of the debtor;

While there is a corporate general partner of the debtor, because of the particular voting arrangement among the three stockholders of the debtor and the three individual members of the limited partnership, it is clear that each has control. As stated above, each may block any firm activity whatsoever, and each could make the affairs of the partnership come to a halt by exercising a veto. The existence of the ability to keep the debtor from acting is just as much control as the ability to cause the debtor to act. While the Bankruptcy Code does not define what is meant by "person in control," there have been numerous holdings in the securities field as to the meaning of control. The meaning of control under the initial Securities Act of 1933 is no different than its meaning in everyday use. *U. S. v. Re*, 336 F.2d 306, 316 (2nd Cir. 1963). In *Kaufman v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 464 F.Supp. 528 (D.Md.1978) Judge Blair reviewed the matter of control under the Securities Act. He noted that "heavy consideration is to be given to the power or potential power to influence and control the activities of a person, as opposed to the actual exercise of that power." 464 F.Supp. at 538. Here both the ability to control and actual control co-exist. Similarly, in *Dyer v. Eastern Trust and Banking Co.*, 336 F.Supp. 890, 915 (D.Me.1971) Judge Gignoux held one of twelve members of a Board of Trustees responsible where the twelve trustees had

full control. Likewise, in *Graphic Sciences, Inc. v. International Mogul Mines Ltd.*, 397 F.Supp. 112, 125 (D.D.C.1974), Judge Gasch looked into the realities of commerce. "Acting working control is the key, whatever may be the basis for that control."

While the court has denied the Motion to Dismiss, the alleged debtor has also requested that this court exercise its abstention powers under 11 U.S.C. § 305. The court will hold a hearing as to whether or not it should dismiss this action upon that basis. The alleged debtor suggests that no useful purpose would be served by continuing the proceedings under Chapter 11. It sees no likelihood of success whatsoever in a reorganization. Indeed, what the debtor did seek was that the Equitable Savings and Loan Association be permitted to go forward with its scheduled foreclosure on March 30, 1982. The record will reflect that the original Motion to Dismiss filed on behalf of the debtor was filed by the same attorney who thereafter was granted leave to intervene on behalf of Equitable Federal Savings and Loan Association. Both Equitable Federal Savings and Loan Association and the persons in control of the alleged debtor would want the foreclosure to go forward immediately. The persons in control have personal liability upon the notes secured by the three trusts upon the subject real property. Having decided that there is no likelihood of success through reorganization under Chapter 11, they would like to minimize their exposure on the continuing interest on the secured loans. Since the successful marketing of the project might require the infusion of some additional cash and since no one appears to be volunteering to advance that cash, there is some question as to what might be accomplished by prolonging a Chapter 11 proceeding. Whether the alleged debtor's principals act from high motives of euthanasia or from a desire to minimize their personal liability is not in issue. The issue is how may the interests of creditors and the debtor be better served? 11 U.S.C. § 305(a)(1). The answer to that question will be developed upon notice and hearing.

The Amended Motion to Dismiss the Involuntary Petition under Chapter 11 is denied.