## In re BRANCHE.

(District Court, N. D. New York. September 12, 1921.)

No. 9141.

**Bankruptcy �köm77—Small current claims not counted in computing number of creditors.**

Small current debts, contracted to be paid monthly or on demand, and which have been previously so paid, such as claims for rent, groceries, drugs, club dues, etc., cannot be resorted to by an insolvent for the purpose of increasing the number of his creditors to 12 or more, to defeat an involuntary petition by a large creditor.

⊃For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

In Bankruptcy. In the matter of Walter L. Branche, alleged bankrupt. Hearing on petition and answer. Order of adjudication.

Muhlfelder & Illch, of Albany, N. Y., for petitioning creditors.

Charles R. Watson, of Albany, N. Y. (George J. Hatt, 2d, of Albany, N. Y., of counsel), for bankrupt.

COOPER, District Judge. The question to be decided here is whether or not Walter L. Branche should be adjudicated a bankrupt. A petition in involuntary bankruptcy was filed against Walter L. Branche by Rosenthal Bros., Cigar Manufacturers, Inc., a creditor, alleging that the bankrupt had less than 12 creditors. An answer was interposed, alleging that there were 18 creditors at the time of the filing of the petition, but not controverting any of the alleged acts of bankruptcy or disputing the petitioner's claim. Subsequently two other creditors filed intervening petitions, and as to the Autoelectric Company, one of them, it appeared that its debt had been paid prior to the filing of its petition. The sole question upon the original petition, then, is whether the creditors are less than 12 in number, within the meaning of the Bankruptcy Law.

Proof was taken as to the issues raised by the answer, and it appeared that the gross debts of the bankrupt amounted to $16,000. Of this amount there is due the petitioner $13,419 for merchandise, consisting of cigars sold. There are no real assets, and the bankrupt is hopelessly insolvent, having squandered his money at the race tracks. Two of the creditors are brothers, and are not to be counted, since they are within the third degree of consanguinity. Bankruptcy Law, § 59e (Comp. St. § 9643). A third creditor is secured by a chattel mortgage, claimed to be fraudulent, and she may not petition. Section 59b. By stipulation the Albany Times Union, a creditor, was stricken from the answer, its debt having been paid. The total number of creditors are thereby reduced to 15, excluding the petitioner and Ellis Kellert, who was permitted to intervene.

Of the remainder, the St. Agnes Cemetery claim, for balance due on contract for purchase of a cemetery lot not yet deeded, is substantially a secured claim. Then there is the debt (for groceries) of Harder, who testified that all bills previous to a month before filing of the petition herein were paid, and all subsequent to that time paid, and that he expected the amount of his charge, $18.12, to be paid. Next, there is a debt due the Albany Yacht Club. It appeared that Branche paid his dues in advance up to the 1st of February (the petition was filed February 22d), and the only amount due was $1.65. There are two bills for medical services, either or both of which might have been contracted after the filing of the petition. Then there remain several small claims for rent, nurse's bill, storage charge, drug charge, and club dues. Some of these claims are of doubtful validity as subsequent debts, such as that of Bruce McDonald Company, Inc., where the dealings of the parties are inconsistent with the existence of a valid debt, and the same is true of the Perry claim for nursing. The garageman

has a statutory lien on the automobile for his storage charge. Few seem to be debts unpaid in good faith.

Mere schemes and artifices to avoid the letter and the spirit of the law will not be tolerated. To treat the holders of such claims just enumerated as creditors, to be considered in determining the number in existence for the purpose of preventing an insolvent debtor from meeting his honest debts, after he has avowedly dissipated and preferentially transferred his only remaining assets, in utter disregard of the rights of creditors, would be folly. Creditors of this kind, who feel secure in having their bills promptly paid, and can have them paid immediately upon insistence, cannot be counted to create an excess number of creditors and defeat the purposes of the Bankruptcy Act. These claims are for current accounts, such as are contracted to be paid from month to month. The folly of considering these people as creditors is demonstrated in the case of the debt of one Westervelt. He claims $16 for meals from January 3d to 15th. The bankrupt paid regularly each week before that time and has since paid regularly each week in advance. Nevertheless, the contention is that he should be counted among the others as a creditor.

To permit such a scheme to be resorted to, claiming that Westervelt and the others referred to are creditors within the intendment of the statute, for the purpose of keeping alive the claims of 12 creditors and by this indirect means to defeat the whole scheme of the statute, is unlawful and void. See In re Blount (D. C.) 142 Fed. 263, where the bankrupt sought to defeat the purposes of the statute by setting up the claim that there were more than 12 creditors, claiming to have bills for groceries, dry goods, drugs, laundry, newspapers, and the like. In answer to this the court stated:

"If the contention of the respondent is to be sustained, the involuntary feature of the Bankruptcy Act would be a dead letter; for any insolvent who desired to prefer some of his creditors, leaving out one or two, could always manage to have as many as 20 creditors by purchasing for his personal use and * * * his family small things amounting to sums ranging, as in the case at bar, from 10 cents to $2, and having them charged. By paying them the succeeding month, after he had made some small purchases, to be charged again, it would always leave a number of creditors ready to be used whenever proceedings of this kind are instituted against him. It is hardly reasonable to suppose that creditors of that kind, who feel secure in having their bills promptly paid, would want to incur the risk of losing a good customer in order to join a bona fide creditor to institute proceedings in bankruptcy. All laws must be given a reasonable construction, and for this reason the claims hereinbefore recited must be disregarded in determining the number of the creditors of Mr. Blount at the time these proceedings were instituted, and if this is done it clearly appeared that there were less than 12 creditors."

In this case the bills referred to were contracted to be paid monthly, were secured for all intents and purposes of the Bankruptcy Law, and the creditors could refuse further credit, unless the bills complained of were paid upon specified times. As was stated in Re Burg (D. C.) 245 Fed. 173, which followed the Blount decision:

"The list filed by defendant, showing his creditors at the date of filing of the petition, discloses 24, not including the plaintiff. Only 3 of them were for sums more than $100; the highest being for $252.56, and 12 of them for sums

under $5. These small claims were current accounts for groceries, drugs, dry goods, milk, gas and oil, telegrams, telephone bills, water, light and gas bills, etc., such as are contracted to be paid for from month to month. Such creditors are practically secured, as their bills have to be paid from month to month before further necessities can be obtained. The Bankruptcy Law is never invoked for such small creditors, who themselves have adequate remedies for the collection of their accounts by cutting off further supplies. As to these accounts I think the maxim, 'De minimis non curat lex,' applies."

If these claims be disregarded, there are accordingly less than 12 creditors. It is not necessary to consider the questions arising upon the later petitions to intervene.

A decree may be entered adjudging Branche a bankrupt.