**In re Robert Maxwell HOOVER, Jr., Debtor.**

**Bankruptcy No. 83–01037–B.**

United States Bankruptcy Court, W.D. Oklahoma.

Sept. 7, 1983.

---

William J. Reifman of Mayer, Brown & Platt, Chicago, Ill., G. Blaine Schwabe, III and Steven L. Barghols of Mock, Schwabe, Waldo, Elder, Reeves & Bryant, Oklahoma City, Okl., for Continental Illinois Nat. Bank and Trust Co. of Chicago.

John W. Swinford, Jr. of Hastie & Kirshner, Oklahoma City, Okl., for Barclays Bank Intern. Ltd.

David Bryant and Stephen W. Elliott of Kline & Kline, Oklahoma City, Okl., for Robert Maxwell Hoover, Jr.

## MEMORANDUM OPINION AND ORDER

ROBERT L. BERRY, Bankruptcy Judge.

On April 22, 1983, Continental Illinois National Bank and Trust Company of Chicago and Barclays Bank International Ltd. (collectively, "petitioning creditors") filed an involuntary petition against Robert M. Hoover, Jr. ("Hoover") pursuant to 11 U.S.C. § 303(b). On May 26, 1983, Hoover answered the involuntary petition and filed a Motion for Summary Judgment. In that motion, Hoover has alleged that he has more than twelve creditors, hence the existence of only two petitioning creditors is fatally defective. Hoover lists the following as creditors, together with the amount owed to them as of April 22, 1983:

| | | |
|---|---|---|
| 1. Alexander Grant & Company | $ | 645.00 |
| 2. American Express | | 3,619.61 |
| 3. B.C. Clark | | 228.80 |
| 4. Barclays Bank International Limited | | 3,027,216.06 |
| 5. Bartex Exploration, Inc. | | 175,400.00 |
| 6. Beacon Club | | 38.48 |
| 7. Blue Chip Moving | | 188.56 |
| 8. John-Kelly Bray | | · 250.00 |
| 9. City of Nichols Hills | | 73.60 |
| 10. Continental Illinois Bank & Trust Company | | 3,975,103.88 |
| 11. Crescent Market | | 550.36 |
| 12. Dyco Petroleum | | 61.72 |
| 13. Eureka Water | | 60.65 |
| 14. Girard Bank of Delaware | | 45.00 |
| 15. Guideposts | | 7.90 |
| 16. Dan Hogan | | 6,027.78 |
| 17. Elizabeth Lane Hoover | | 181,760.00 |
| 18. Internal Revenue Service | | 234,765.62 |
| 19. Jernigan Brothers Trucking | | 8,057.06 |
| 20. MCI | | 209.52 |
| 21. Midwest Mud Company | | 2,500.00 |

| | |
|---|---|
| 22. Monkey Island Airport | $ 45.00 |
| 23. Mountain View Management | 159.50 |
| 24. Myriad Gardens | 250,000.00 |
| 25. Nichols Hills Drug | 63.90 |
| 26. Oklahoma City Golf & Country Club | 1,951.93 |
| 27. Oklahoma City University | 7,500.00 |
| 28. Oklahoma Natural Gas Company | 169.29 |
| 29. Oklahoma Tax Commission | Amount Unknown |
| 30. Orbach's | 146.64 |
| 31. Paragon Cleaners | 91.00 |
| 32. Petro-Lewis | 1,543.90 |
| 33. Red Fox, Ltd. | 19.48 |
| 34. Red Rock Exploration, Inc. | 3,226.24 |
| 35. Trochtas Flowers, Inc. | 338.32 |
| 36. United Methodist Church of Nichols Hills | 7,500.00 |
| 37. United Methodist Foundation | 2,000.00 |
| 38. VISA | 1,678.06 |
| 39. White House Cleaners | 158.75 |
| 40. John A. Brown | 40.00 |
| 41. Pierson, Ball & Dowd | 3,067.00 |
| 42. Schnider, Shamberg & May | 664.16 |

The contention of the petitioning creditors is that Hoover has only four creditors qualified to be counted in determining the sufficiency of the number of signatures on the involuntary petition. The parties submitted extensive briefs, transcripts and documentation and the matter was taken under advisement.

Petitioning creditors urge that some of these listed creditors must be excluded, alleging that they received voidable post petition transfers; some are alleged to hold contingent claims. Others are urged exclusion allegedly because they do not hold a valid claim pursuant to 11 U.S.C. § 101(4). Petitioning creditors further contend that most of the creditors must be excluded, purportedly because they received preferential transfers. Others are urged to be excluded for alleged fraudulent transfers. Finally, a substantial portion of the creditors are urged exclusion because they hold small or recurring claims.

The petitioning creditors have described the following as creditors holding small claims and as recipients of preferential transfers: Alexander Grant & Company, American Express, B.C. Clark, Beacon Club, Blue Chip Moving, City of Nichols Hills, Crescent Market, Dyco Petroleum, Eureka Water, Guideposts, Internal Revenue Service (preferential transfer only), MCI, Mountain View Management, Nichols Hills Drug, Oklahoma Natural Gas Company, Oklahoma Tax Commission (preferential and contingent), Orbach's, Paragon Cleaners, Red Fox Ltd., Trochtas Flowers, Inc., White House Cleaners, John A. Brown, Pierson Ball & Dowd, and Schnider, Shamberg & May.

Since we believe a resolution of this matter may be effectuated by determining whether the above are creditors for purposes of proceeding under 11 U.S.C. § 303(b)(2), we do not comment on the petitioning creditors allegations regarding the balance of the forty-two listed creditors.

The filing of an involuntary petition in bankruptcy is controlled by 11 U.S.C. § 303, the pertinent part of which provides:

(b) An involuntary case is commenced by the filing with the bankruptcy court of a petition under chapter 7 or 11 of this title—

(1) by three or more entities, each of which is either a holder of a claim against such person that is not contingent as to liability or an indenture trustee representing such a holder, if such claims aggregate at least $5,000 more than the value of any lien on property of the debtor securing such claims held by the holders of such claims;

(2) if there are fewer than 12 such holders, excluding any employee or insider of such person and any transferee of a transfer that is voidable under section 544, 545, 547, 548, 549, or 724(a) of this title, by one or more of such holders that hold in the aggregate at least $5,000 of such claims;

11 U.S.C. § 303(b)(1), (2). It can be seen then that before fewer than three creditors may file an involuntary petition there must be fewer than twelve creditors. If there are twelve or more creditors, three petitioning creditors are required.

We believe that, given the facts at bar, the dispositive question becomes whether holders of small or recurring claims should

be counted as creditors for purposes of a petition initiated pursuant to § 303(b)(2).

The Fifth Circuit, in construing § 59b of the Bankruptcy Act, the predecessor to 11 U.S.C. § 303(b), stated that "[I]t was not the intent of Congress to allow recurring bills such as utility bills and the like to create a situation which, by refusal of these small creditors to join in an involuntary petition, can defeat the use of the Bankruptcy Act by a large creditor, as in the subject case. This would be grossly inequitable . . . ." *Denham v. Shellman Grain Elevator, Inc.,* 444 F.2d 1376, 1379 (5th Cir. 1971). The Court in the case of *In re Branche,* 275 F. 555 (W.D.N.Y.1921), relied on by the *Denham* Court, stated the position as follows: "Creditors of this kind, who feel secure in having their bills promptly paid, and can have them paid immediately upon insistence, cannot be counted to create an excess number of creditors and defeat the purposes of the Bankruptcy Act." *Id.* at 557. Some seven years after the *Denham* decision, the Texas courts had occasion to address the issue and stated it as follows:

> It is illogical that creditors who hold claims of $50.00 or less are denied vote at a meeting of creditors, thus having no voice, but (by being counted as a creditor for the purposes of Section 59 of the Bankruptcy Act) can defeat an attempt by a valid petitioning creditor to prosecute an involuntary petition in bankruptcy. It would be an anomaly if an adjudication occurred as a result of an involuntary petition filed by three creditors, and thereafter, two of the three creditors could not vote at a meeting of the creditors. This Court also believes that if two petitioning creditors held claims of $50.00 or less, any alleged bankrupt would vigorously attack their standing to be a petitioning creditor.

*In re Gardner,* 3 Bankr.Ct.Dec. (CRR) 571, 573 (Bankr.S.D.Tex.1977). Congressional intent on this issue was further interpreted in *In re Alexandria Sand and Gravel Co.,* 3 Bankr.Ct.Dec. (CRR) 835 (Bankr.S.D.Ohio 1977).

It would not appear that it was the intent of Congress to create a statutory remedy (a single creditor petition) that would be inapplicable in most all cases, and thus virtually meaningless. Small, recurrent monthly bills incurred by an alleged bankrupt, and kept current, are properly excluded from the creditors to be counted in applying the provisions of § 59e of the Act to the circumstances of this case. *Id.* at 838. Only recently, a court refused to consider small, current debts in determining how many creditors need join in an involuntary petition, citing the principle of *De minimis non curat lex. In re Blaine Richards and Co., Inc.,* 10 B.R. 424 (Bkrtcy.E.D.N.Y. 1981). While the law may not concern itself with trifles, adjudicating whether an individual should be placed in involuntary bankruptcy is not a trifling matter.

If the aforementioned were the sole cases which have addressed the subject, the matter would be at an end. However, other cases have held *contra.*

Approximately fifteen years after *In re Branche, supra,* was decided, the New York courts declined to follow it, citing authority to the contrary and concluding that "[T]he better view is that the small running account claims should be counted as of the date the petition is filed, because no exception has been made with respect to them and they are claims provable in bankruptcy". *In re Murray,* 14 F.Supp. 146, 147 (W.D.N.Y.1936).

Two months after *In re Blaine Richards and Co., Inc., supra, Matter of Skye Marketing Corp.,* 11 B.R. 891 (Bkrtcy.E.D.N.Y. 1981) was decided. While the *Skye* Court found it unnecessary to consider the petitioning creditor's primary argument that the holders of small recurring claims not be counted in determining the sufficiency of the single creditor petition, the Court, in a footnote, observed:

> The exclusion of holders of small, recurring claims in determining the sufficiency of single creditor petitions is a judicially developed rule which was applied as a supplement to the creditor counting provisions of section 59(e) of the Bankruptcy

Act. Undoubtedly, the rule was developed in order to mitigate the harshness of the statutory rules. In an opinion decided under the Bankruptcy Code, Judge Cecelia Goetz of this district reluctantly applied the rule by excluding the holder of a claim totaling $19.00 under the principle *de minimis non curat lex. In re Blaine Richards and Co., Inc.,* 10 B.R. 424 (Bkrtcy.E.D.N.Y.1981).

. . . . .

This Court believes that the judicially developed exception no longer is necessary, and that the holders of small recurring claims should be counted in determining the requisite number of petitioners under the Code: if they are paid their claims on a regular basis, it is likely that most would be excluded from the computation in any event by Code section 303(b)(2) as recipients of involuntary gap preferences under Code section 549(b). If they are not so excluded, they should be counted. Indeed, the express language of section 303(b), and the broad definition of "claim" which is set forth in section 101(4) of the Code, clearly and unambiguously include the holders of small recurring claims.

*Id.,* n. 5 at 899.

The Eighth Circuit, in previously ruling on the issue, reached the same conclusion as the *Skye* Court. *See Grigsby-Grunow Co. v. Hieb Radio Supply Co.,* 71 F.2d 113 (8th Cir.1934) and *Theis v. Luther,* 151 F.2d 397 (8th Cir.1945), *cert. denied* 327 U.S. 781, 66 S.Ct. 681, 90 L.Ed. 1009 (1946) (interpreting § 59 of the Bankruptcy Act, held that all creditors are to be counted, notwithstanding that claims of some of the creditors are small in amount, current claims, or payable at stated intervals).

The Ninth Circuit, in the case of *In re Okamoto,* 491 F.2d 496 (9th Cir.1974), addressed the issue by way of commenting on *Denham v. Shellman Grain Elevator Inc., supra.*

We are not presuaded by *Denham,* for it appears to us that the *Denham* court ignored unambiguous Congressional direction. The Congress has explicitly prescribed the procedure that *must* be followed when less than three creditors join in the petition. In such circumstances the Act provides that the alleged bankrupt must have less than twelve creditors and expressly excludes certain types of creditors from the required computation. Since Congress made no distinction between large and small claims, we cannot arrogate unto ourselves the power to do so and thereby engraft an additional exception to the Act. (emphasis in original)

*In re Okamoto, supra,* at 498. The Court in *Okamoto* held that creditors with claims for amounts less than $65 were not to be excluded as *de minimis* in determining the number of creditors in an involuntary proceeding.

Only recently, the Seventh Circuit has declined to follow the *de minimis* rule. While acknowledging that there are good policy reasons for excluding small, recurring claims, "[C]ongress has not specifically authorized exclusion, and in the absence of any indication that Congress intended this exclusion, we have no authority to engraft it onto those that Congress expressly provided." *Matter of Rassi,* 701 F.2d 627, 632 (7th Cir.1983). "We hold that bona fide small, recurring claims must be included in the § 303(b)(2) count." *Id.*

While the Tenth Circuit has not yet been called on to decide the question, the District Court of Colorado has. In the case of *In re Colorado Lime Company,* 298 F.Supp. 1053 (D.Colo.1969), the Court, interpreting § 59 of the Bankruptcy Act, held that creditors whose claims are small must be counted. Judge Doyle noted that exclusion was not contemplated by the Bankruptcy Act and therefore the courts are not justified in engrafting such exclusions.

Of the courts which have held that small, recurring claims are to be included in a creditor count, some have intimated that their finding was predicated upon a lack of a scheme on the part of the debtor to inflate the creditor count. *See Grigsby-Grunow Co. v. Hieb Radio Supply, supra* (nothing to indicate claims are fictitious or fraudulent); *In re Colorado Lime Company,*

*supra* (debtor does not appear to have a scheme existing); *In re Okamoto, supra* (the bankruptcy referee found no existence of a scheme—such finding not clearly erroneous); *Matter of Rassi, supra* (different result if alleged debtor had incurred or maintained small, recurring debts as part of a scheme to avoid letter and spirit of bankruptcy laws). *Contra, Denham v. Shellman Grain Elevator, Inc., supra* (whether a scheme was involved not important in excluding recurring claims such as utility bills). In the instant case no such allegation of a scheme or artifice on the part of Hoover to increase his creditor count has been made, nor have we found one. We therefore do not comment on whether the presence of such a scheme would alter our opinion.

With the exception of *In re Blaine Richards and Co., Inc., supra,* the aforementioned cases, holding that small, recurring claims are to be excluded from a creditor count, were decided under § 59 of the Bankruptcy Act, 11 U.S.C. § 95. Subsection e. of § 59 provided an explicit guideline for computing the number of creditors for purposes of determining how many creditors must join in the involuntary petition:

e. In computing the number of creditors of a bankrupt for the purpose of determining how many creditors must join in the petition, there shall not be counted (1) such creditors as were employed by the bankrupt at the time of the filing of the petition; (2) creditors who are relatives of the bankrupt or, if the bankrupt is a corporation, creditors who are stockholders or members, officers or members of the board of directors or trustees or of other similar controlling bodies of such bankrupt corporation; (3) creditors who have participated, directly or indirectly, in the act of bankruptcy charged in the petition; (4) secured creditors whose claims are fully secured; and (5) creditors who have received preferences, liens, or transfers void or voidable under this Act.

The Bankruptcy Code, 11 U.S.C. §§ 101–151326, abolished these exclusions. Exclud-ed creditors are now defined at 11 U.S.C. § 303(b)(2).

While § 59e of the Act did not specifically exclude creditors with small, recurring claims from a creditor count, the courts nonetheless found Congressional intent to do so in § 56c of the Bankruptcy Act. *See Denham v. Shellman Grain Elevator, Inc., supra; In re Gardner, supra;* and *In re Alexandria Sand and Gravel Co., supra.* Section 56c provided:

Claims of $50 or less shall not be counted in computing the number of creditors voting or present at creditors' meetings, but shall be counted. in computing the amount.

11 U.S.C. § 92. Former Bankruptcy Rule 207(b) raised to $100 the minimum amount of a claim to be counted in computing the majority in number of claims.

The *ratio decidendi* of these Courts was that since a creditor holding a claim of less than $50 would be unable to participate at a creditors' meeting, Congress intended that such a creditor also be unable to be a petitioning creditor in an involuntary bankruptcy.

▪ While we admit that such an argument contains a modicum of persuasiveness we believe that had Congress intended such a result, it could have provided for such a way of the exclusions pursuant to § 59e of the Bankruptcy Act. In any case, § 56c has no counterpart under the Bankruptcy Code. Since Congress has limited the exclusions to those enumerated in § 303(b)(2) of the Code we are constrained to augment the list. As Judge Doyle stated: "[T]he courts are not justified in engrafting this additional exclusion; . . . the proper appeal was to Congress rather than to the courts." *In re Colorado Lime Company, supra,* at 1056. As an aside, we note that, pursuant to the new Bankruptcy Rules, effective August 1, 1983, Rule 2007 has deleted the Rule 207 provision which prohibited a holder of a claim of less than $100 from voting in a creditors' meeting.

We are further reinforced in our opinion by the definition of "claim" as provided for at 11 U.S.C. § 101(4). " 'Claim' means

right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, secured, or unsecured." *Id.* at (4)(A). Under such a broad definition, it would stretch judicial interpretation to the breaking point to read into the definition an exception based on the amount of the claim. If a creditor has a claim, and the creditor is not one who would be excluded pursuant to the provisions of 11 U.S.C. § 303(b)(2), then that creditor should be counted in determining the sufficiency of a petition filed under § 303(b)(2). Accordingly, those creditors previously listed as holders of small claims are to be included in determining the sufficiency of the petition filed herein.

The next matter we need resolve is a determination as to whether the creditors previously listed as holders of small claims are also the beneficiaries of preferential transfers. The recipient of a transfer pursuant to 11 U.S.C. § 547 is expressly excluded from the creditor count as per 11 U.S.C. § 303(b)(2).

The pertinent part of § 547 provides as follows:

> (b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of property of the debtor—
>
> (1) to or for the benefit of a creditor;
>
> (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
>
> (3) made while the debtor was insolvent;
>
> (4) made—
>
> (A) on or within 90 days before the date of the filing of the petition;
>
> .    .    .    .    .
>
> (5) that enables such creditor to receive more than such creditor would receive if—
>
> (A) the case were a case under chapter 7 of this title;
>
> (B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b).

At Hoover's deposition, he produced the aforementioned list of creditors, which list showed the dates of last payment for each creditor. The majority of those creditors listed received payment within ninety days of the date of the filing of the petition. Petitioning creditors urge that as these creditors received payment within ninety days of the filing of this involuntary petition, such creditors presumptively received preferential transfers.

The exception to § 547(b) is subsection (c) of the same section. It provides in pertinent part:

> (c) The trustee may not avoid under this section a transfer—
>
> .    .    .    .    .
>
> (2) to the extent that such transfer was—
>
> (A) in payment of a debt incurred in the ordinary course of business or financial affairs of the debtor and the transferee;
>
> (B) made not later than 45 days after such debt was incurred;
>
> (C) made in the ordinary course of business or financial affairs of the debtor and the transferee; and
>
> (D) made according to ordinary business terms.

11 U.S.C. § 547(c)(2). The Legislative History provides the rationale behind this section:

> The second exception protects ordinary course of business (or financial affairs, where a business is not involved) transfers. For the case of a consumer, the paragraph uses the phrase "financial affairs" to include such nonbusiness activities as payment of monthly utility bills. If the debt on account of which the transfer was made was incurred in the ordinary course of both the debtor and the transferee, if the transfer was made not later than 45 days after the debt was incurred, if the transfer itself was made

in the ordinary course of both the debtor and the transferee, and if the transfer was made according to ordinary business terms, then the transfer is protected. The purpose of this exception is to leave undisturbed normal financial relations, because it does not detract from the general policy of the preference section to discourage unusual action by either the debtor or his creditors during the debtor's slide into bankruptcy.

H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 373–74 (1977); S.Rep. No. 95–989, 95th Cong., 2d Sess. 88 (1978), U.S.Code Cong. & Admin.News 1978, p. 5787, 6329.

In their Supplemental Brief in opposition to Motion for Summary Judgment, the petitioning creditors have taken issue with respect to the applicability of the § 547(c)(2) exception to Hoover. They first question whether the payments at issue were payments made in Hoover's "ordinary course of business or financial affairs". Viewing the creditors that have previously been listed as holders of small claims and recipients of preferential transfers, we cannot, as a matter of law, say that they were not incurred within Hoover's "ordinary course of business or financial affairs".

Petitioning creditors further question when the transfers were actually "made". They urge that for preference purposes, the date on which a transfer by check is "made" is the date when the check is honored by the paying bank, citing *Nicholson v. First Inv. Co.,* 705 F.2d 410 (11th Cir.1983). Their position is that while arguably, payment may have occurred within 45 days from the date of invoice, the date the check was honored occurred at a later date, and therefore the transaction is taken outside of the 45 day period. *Nicholson* was decided based on § 60 of the Bankruptcy Act, 11 U.S.C. § 96. The Court found that the Bankruptcy Act provided that for the purpose of determining whether a performance had taken place, "[A] transfer of property ... shall be deemed to have been made or suffered at the time when it became so far perfected that no subsequent lien upon such property obtainable by legal or equitable

proceedings on a simple contract could become superior to the rights of the transferee." 11 U.S.C. § 96a(2). The Court held that under the "so far perfected language" of the Bankruptcy Act, the date of transfer is the date when the check is honored by the paying bank. Whether we agree with such an interpretation is not germane for the Legislative History of § 547(c) demonstrates opposite Congressional intent. "[P]ayment of a debt by means of a check is equivalent to a cash payment unless the check is dishonored. Payment is considered to be made when the check is delivered for purposes of sections 547(c)(1) and (2)." 124 Cong.Rec.H. 11,097 (daily ed. Sept. 28, 1978); S. 17,414 (daily ed. Oct. 6, 1978).

Petitioning creditors next make inquiry as to whether Hoover actually made payment within forty-five days of incurring a debt. Petitioning creditors admit that while payment was made within forty-five days of the invoice date of the bill, they question whether payment was made within forty-five days of the sale which the invoice reflects.

■ This question of payment within forty-five days of incurring the debt is, we believe, the most crucial in our determination as to the existence of a preferential transfer. We have therefore examined Hoover's invoices and sales receipts in great detail, a brief report of which is in order.

B.C. Clark has an invoice dated April 30, 1983 for a purchase made on April 22, 1983. Payment was received on April 16, 1983 for purchases made on March 9, 1983 and March 25, 1983.

The Beacon Club sent an invoice dated March 25, 1983 covering dues for the month of April. These were paid on April 14, 1983. Previously, payments were made on February 18, 1983, on an invoice for February dues, dated January 25, 1983, and on March 10, 1983, on an invoice for March dues, dated February 25, 1983.

The City of Nichols Hills is owed for services rendered from March 31, 1983 to April 30, 1983. Payment was made on

April 4, 1983 for services rendered in the prior billing period.

Crescent Market sent its invoice dated May 3, 1983 for accounts billed in April. For the month of March, the first purchase was dated March 3, 1983. The March account was paid on April 15, 1983.

Eureka Water sent an invoice dated April 30, 1983 for two purchases incurred on April 13, 1983. Previously a payment was received on April 16, 1983 for purchases incurred in March. The invoice indicates statements are sent monthly.

MCI sent an invoice dated May 1, 1983 for telephone calls placed in April. Payment was made on April 15, 1983 for calls placed in March, the earliest of which was March 1, 1983 at a cost of $1.37; the balance of the telephone calls were placed between March 3, 1983 and March 31, 1983.

Mountain View sent an invoice dated May 1, 1983 attributable to the April management fee. Payment was made on April 15, 1983 for the March management fee.

Nichols Hills Drug sent an invoice dated April 27, 1983 for purchases made on March 31, 1983 and April 20, 1983. Payment had previously been made on April 15, 1983 for bills incurred on March 9, 1983, invoiced on March 25, 1983. Payment had also been made on March 10, 1983 for bills incurred on February 10, 1983 and February 16, 1983, invoiced on February 24, 1983.

The last invoice of Oklahoma Natural Gas indicates that it was owed for utility service provided between April 5, 1983 and May 4, 1983. Prior payments include payment on February 9, 1983 for services rendered January 4, 1983 to February 2, 1983; payment on April 8, 1983 for services rendered February 2, 1983 to March 4, 1983 (account overdue after March 22); and payment on April 15, 1983 for services rendered March 4, 1983 to April 5, 1983.

Red Fox Ltd. received payment on April 5, 1983 for purchases made on February 28, 1983. Red Fox last invoice is dated April 28, 1983 for purchase made on March 31, 1983.

Trochtas Flowers sent an invoice dated April 29, 1983 for purchases made on April 5, 1983, April 12, 1983 and April 26, 1983. Previously, purchases were made on January 11, 1983 and on January 28, 1983 and payment for these purchases was received on February 23, 1983. In February, purchases were made on February 16, 1983, February 24, 1983 and February 28, 1983. Payment for these purchases was received on March 16, 1983. In March, purchases were made on March 3, 1983, March 7, 1983, March 15, 1983, March 23, 1983 and March 24, 1983. Payment for these was received on April 22, 1983.

White House Cleaners possesses a receipt indicating services were rendered on March 30, 1983, March 31, 1983, April 1, 1983, April 6, 1983, April 8, 1983, April 11, 1983, April 13, 1983, April 15, 1983, April 18, 1983, April 19, 1983 and April 20, 1983. Payment for prior services was received on April 20, 1983.

John A. Brown has a receipt indicating a purchase on April 20, 1983. Previous purchases were made on February 25, 1983 and March 3, 1983. Payment for these purchases was received March 30, 1983.

Pierson, Ball and Dowd, a law firm, sent an invoice dated April 14, 1983. Previously, payment was made on April 4, 1983. Schnider, Shamberg and May, a law firm, sent an invoice dated May 23, 1983 for services rendered from March 9, 1983 to May 5, 1983. Previously, payment for legal work incurred in February was made on March 31, 1983. Both of these law firms are apparently engaged in ongoing legal work for Hoover.

All of these creditors, exceeding twelve in number, with minor exception, received payment within 45 days of the respective debt incurral, for debts incurred in the ordinary course of business or financial affairs of the debtor and the transferee. Accordingly, these creditors come within the exception provided for in § 547(c) and are to be included in the creditor count.

■ Two more creditors, the IRS and the Oklahoma Tax Commission are sought to be

excluded solely because they allegedly received voidable preferences. The Legislative History of § 547 provides that "[A] payment of taxes when they are due, either originally or under an extension, or within 45 days thereafter, will not constitute a voidable preference." H.R.Rep. No. 95–595, 95th Cong. 1st Sess. 373–74 (1977); S.Rep. No. 95–989, 95th Cong., 2d Sess. 88 (1978), U.S.Code Cong. & Admin.News 1978, p. 6329. The Court takes judicial notice that taxes, with the exception of estimated tax payments, are due on April 15. Hoover paid his on April 13, 1983. Payments made to the IRS and the Oklahoma Tax Commission are not, therefore, to be viewed as voidable preferences.

Further, the IRS, owing to a pending deficiency action against Hoover for the tax years 1974 and 1979, and the Oklahoma Tax Commission, to the extent that its claim will be based on the outcome of this deficiency action, are current creditors of Hoover. There is some question as to whether the Oklahoma Tax Commission is the holder of a contingent claim, insofar as any determination as to whether the Commission is owed money will be based on the outcome of the IRS deficiency action. Since the inclusion of the Oklahoma Tax Commission is not determinative as to the sufficiency of the creditor count, we will assume, without deciding, that their claim is not contingent in nature.

Finally, the petitioning creditors raise an issue unrelated to the preference question. They question that, with respect to some purchases, notably those from B.C. Clark and John A. Brown, as the purchasor was Mrs. Hoover, then perhaps Hoover may have incurred an obligation for which he did not receive fair consideration or reasonably equivalent value and which might therefore be subject to the fraudulent transfer provisions of 11 U.S.C. § 548. We first note that the bills were charged to the account of Hoover; responsibility for them therefore lies with him. More importantly though, the question of whether a husband receives fair consideration or a reasonably equivalent value when he undertakes to pay for items which are purchased by his wife,

be she present or past, is not a question which lends itself to judicial resolution.

For purposes of the Motion for Summary Judgment then, the following are to be considered as creditors of Hoover: B.C. Clark, Beacon Club, City of Nichols Hills, Crescent Market, Eureka Water, MCI, Mountain View, Nichols Hills Drug, Oklahoma Natural Gas, Red Fox Ltd., Trochtas Flowers, White House Cleaners, John A. Brown, Pierson, Ball and Dowd, Schneider, Shamberg and May, the IRS and the Oklahoma Tax Commission. We do not mean to imply that the other entities listed by Hoover are not creditors, rather these seventeen named creditors are sufficient for determining that the petition herein mandated three petitioning creditors.

In finding that small, recurrent claims are to be included in the creditor account for purposes of 11 U.S.C. § 303(b)(2) we are clearly in the majority opinion. While we may sympathize with the position in which the petitioning creditors find themselves, we are not prepared to invade Congressional domain. To do so would be a clear abuse of authority, and would constitute action taken outside the purview of the Bankruptcy Code. As to whether Hoover has qualified for the exception provided for in 11 U.S.C. § 547(c)(2), we believe that basic mathematics and a look at the nature of the alleged creditors indicates that he has so qualified.

The final matter before the Court is Hoover's request for costs and attorneys fees. Pursuant to 11 U.S.C. § 303(i)(1), the awarding of costs and attorney's fee is within the discretion of the Court. Given facts known to the Court in the instant case, Hoover's request for attorneys fees and costs is denied.

Accordingly, the Motion for Summary Judgment is hereby granted and the petition is dismissed. Motion for attorney fees and costs is denied.

Judgment will be entered separately.

Pursuant to B.R. 7052 this Memorandum Opinion and Order constitutes the findings of fact and conclusions of law.