In the Matter of FASANO/HARRISS PIE COMPANY, Debtor.

Richard REMES, Trustee, Plaintiff,

v.

ACME CARTON CORPORATION, Defendant.

Bankruptcy No. HK 82 1553. Adv. No. 83 174.

United States Bankruptcy Court, W.D. Michigan.

Oct. 17, 1984.

Robert E.L. Wright, Kalamazoo, Mich., for plaintiff.

Martin J. Leavitt and Karen L. Faber, Northville, Mich., for defendant.

## OPINION

LAURENCE E. HOWARD, Bankruptcy Judge.

—DATE OF TRANSFER BY CHECK FOR PURPOSES OF § 547(b) and § 547(c)

—CONTEMPORANEOUS EXCHANGE EXCEPTION TO PREFERENCES (§ 547(c)(1))

—ORDINARY COURSE OF BUSINESS EXCEPTION TO PREFERENCES (§ 547(c)(2))

—SUBSEQUENT ADVANCE EXCEPTION TO PREFERENCES (§ 547(c)(4))

The trustee appointed in this case, Richard C. Remes, commenced this adversary proceeding against the defendant, Acme Carton Corporation, to recover for the estate three transfers alleged to be preferential under 11 U.S.C. § 547(b).

The defendant was a supplier of paperboard cartons to the debtor, Fasano/Harriss Pie Company in late 1981 and early 1982. At a hearing held on this matter on July 26, 1984, Edmond Walsh, the president and sole shareholder of the defendant, testified that the debtor failed to keep its payments current so that by the end of January, 1982, the receivable on the debtor's account grew to $150,000. (trans. at 18) This apparently alarmed the defendant's bank where the defendant was only permitted to borrow against receivables. The bank warned the defendant that unless the debtor's receivable was reduced or maintained at the same amount it would be eliminated and the defendant would not be permitted to borrow against it. (trans. at 18) As a consequence, Mr. Walsh met with Franklin Lamb, senior vice-president of the debtor, on several occasions and demanded payment approximating the value of merchandise on the next shipments prior to their delivery. Complying with this re-

quest, the debtor issued three checks to the defendant as follows:

1. check # 16138 ("check # 1") in the total amount of $25,199.47 delivered on February 5, 1982, and honored by the drawee bank on February 16, 1982. The trustee seeks to recover only $8,393.52 from this transaction after giving credit for those debts which in his judgment were incurred within 45 days of the date that the transfer was made and in the ordinary course of the debtor's business under 11 U.S.C. § 547(c)(2).

2. check # 16231 in the total amount of $22,107.91 delivered on February 12, 1982, but dishonored by the bank. This check was replaced by check # 3777 ("check # 2") in the same amount which was delivered on March 2, 1982, and honored by the drawee bank on March 3, 1982. The trustee seeks to recover $21,-759.44 from this transaction again after giving credit under § 547(c)(2).

3. check # 3870 ("check # 3") in the total amount of $3,349.07 delivered on February 26, 1982, and honored by the drawee bank on March 4, 1982. Prior to trial, the trustee stipulated that this transfer constituted a contemporaneous exchange under 11 U.S.C. § 547(c)(1) and therefore is not avoidable.

Upon receiving these three checks, the defendant released the merchandise as agreed between the parties respectively on February 5, 1982; February 16, 1982; and March 5, 1982.

The defendant has raised various defenses against the trustee's preference action which this Court shall consider in turn. Except as to the issues of antecedent indebtedness under § 547(b)(2) and whether the first transfer occurred during the 90 day preference period under § 547(b)(4)(A) to be discussed *infra,* the defendant does not dispute and the Court finds that the trustee has met his burden of proof under § 547(b).

I. Is A Check "Transferred" For The Purposes Of Section 547(b) On The Date It Is Delivered Or The Date It Is Honored By The Drawee Bank?

■ An involuntary chapter 7 petition was filed against the debtor on May 9, 1982. Transfers by the debtor occurring on or subsequent to February 10, 1982, are within the 90 day preference period under 11 U.S.C. § 547(b)(4)(A).

The defendant claims that a check is transferred on the date of its delivery and since check # 1 was delivered on February 5, 1982, it falls outside the trustee's avoiding power. The trustee, on the other hand, claims that a check is transferred on the date of its honor by the drawee bank and since check # 1 was honored on February 16, 1982, it is potentially avoidable.

The overwhelming majority of courts that have decided this issue under advisement hold that the date of honor of a check controls for purposes of § 547(b)(4).[1] The rationale of these cases is that a check simply presents an order to the drawee

1. *Nicholson v. First Investment Co.,* 705 F.2d 410 (11th Cir.1983) (an Act case); *Fitzpatrick v. Philco Finance Corp.,* 491 F.2d 1288 (7th Cir.1974) (an Act case); *In re Georgia Steel, Inc.,* 38 B.R. 829, 11 B.C.D. 1163 (Bankr.M.D.Ga.1984); *In re Brent Explorations, Inc.,* 31 B.R. 745, 10 B.C.D. 1123 (Bankr.D.Col.1983); *In re Ellison,* 31 B.R. 545 (Bankr.M.D.Ga.1983); *In re Mailbag International, Inc.,* 28 B.R. 905 (Bankr.D.Conn.1983); *In re Moran Air Cargo, Inc.,* 30 B.R. 406 (Bankr. D.R.I.1983); *In re Gander Mountain, Inc.,* 29 B.R. 266 (Bankr.E.D.Wis.1983); *In re Video East,* 33 B.R. 61 (Bankr.E.D.Pa.1983); *In re Naudain, Inc.,* 32 B.R. 875 (Bankr.E.D.Pa.1983); *In re Bob Grissett Golf Shoppes, Inc.,* 34 B.R. 320 (Bankr.E.D.Va.1983); *In re Mindy's, Inc.,* 17 B.R. 177 (Bankr.S.D.Ohio 1982); *In re Super*

*Market Distributors Corp.,* 25 B.R. 63 (Bankr.D. Mass.1982); *In re Skinner Lumber Co., Inc.,* 27 B.R. 669 (Bankr.D.S.C.1982); *In re Saco Local Development Corp.,* 25 B.R. 876 (Bankr.D.Me. 1982); *In re Ardmore Sales Co., Inc.,* 22 B.R. 911 (Bankr.E.D.Pa.1982); *In re Fabric Buys of Jericho,* 22 B.R. 1010 (Bankr.S.D.N.Y.1982); *In re Sportsco, Inc.,* 12 B.R. 34 (Bankr.D.Ariz.1981); *In re Duffy,* 3 B.R. 263 (Bankr.S.D.N.Y.1980). *Contra Shamrock Golf Co. v. Richcraft, Inc.,* 680 F.2d 645 (9th Cir.1982) (an Act case); *In re Sider Ventures & Services Corp.,* 33 B.R. 708, 11 B.C.D. 524 (Bankr.S.D.N.Y.1983) (applying § 547(e)(2) Court held check is transferred on date of delivery if honored within 10 days thereafter.)

bank to make payment and does not vest in the payee any title to or interest in the funds of the drawee bank until the check is honored. *See* § 3–409(1) of the Uniform Commercial Code as adopted in M.C.L.A. § 440.3409. Prior to this date, third party creditors may prevent collection on the check through garnishment on the bank account or the payor can stop payment on the check. Additionally there may be insufficient funds to cover payment on the check. An ordinary check is distinguishable from a certified check or cashier's check which becomes the primary obligation of the issuing bank and is the legal equivalent of currency transferred upon delivery. *See In re Mailbag International, Inc.*, 28 B.R. 905 (Bankr.D.Conn.1983).

This Court finds the majority view persuasive. Check #1 was therefore transferred on February 16, 1982, clearly within the 90 day period prescribed by § 547(b)(4)(A).

II. Is A Check "Transferred" For The Purposes Of Section 547(c)(1), (c)(2) and (c)(4) On The Date It Is Delivered Or The Date It Is Honored By The Drawee Bank?

■ Unlike the situation under § 547(b), legislative history to § 547(c)(1) directs when a transfer occurs by check.

Normally, a check is a credit transaction. However, for purposes of this paragraph, a transfer involving a check is considered to be "intended to be contemporaneous," and if the check is presented for payment in the normal course of affairs, which the Uniform Commercial Code specifies as 30 days, U.C.C. § 3–503(2)(a), that will amount to a transfer that is "in fact substantially contemporaneous."

H.R.Rep. No. 595, 95th Cong., 1st Sess. 373 (1977).

"In enacting the 'contemporaneous exchange' exception, Congress intended to codify decisions under the old bankruptcy act which had held that, when a cash sale was intended, acceptance of a check instead of cash did not change the character of the

transaction, so long as the check was cashed within a reasonable period of time." *In re Arnett*, 731 F.2d 358, 361 (6th Cir. 1984). Thus, so long as a check is presented for payment within 30 days of delivery and is duly honored, the date of payment relates back to the date of delivery.

A problem of interpretation arises however since the legislative history to paragraphs (c)(2) and (c)(4) is silent on the issue of when a transfer by check occurs. Courts that have considered this issue take one of three approaches.

The first line of cases holds that a transfer by check generally occurs on the date of delivery under paragraphs (c)(2) and/or (c)(4) as well as paragraph (c)(1). *See In re O'Neill*, 729 F.2d 35, 11 B.C.D. 1027 (1st Cir.1984) (decision under § 547(c)(2); *In re Gold Coast Seed Co.*, 30 B.R. 551, 10 B.C.D. 1049 (9th Cir.Bankr.App.1983) (decision under § 547(c)(4)); *In re Georgia Steel, Inc.*, 38 B.R. 829, 11 B.C.D. 1163 (Bankr.M.D.Ga.1984) (decision under § 547(c)(2) and (c)(4)); *In re Philadelphia Light Supply Co.*, 33 B.R. 734, 11 B.C.D. 284 (Bankr.E.D.Pa.1983) (decision under § 547(c)(4)); *In re Hoover*, 32 B.R. 842, 10 B.C.D. 1347 (Bankr.W.D.Okla.1983) (decision under § 547(c)(2)); *In re Saco Local Development Corp.*, 25 B.R. 876 (Bankr.D. Me.1982) (decision under § 547(c)(2); *In re Garland, Inc.*, 19 B.R. 920 (Bankr.E.D.Mo. 1982) (decision under § 547(c)(4)). These cases generally rely on a statement made in the legislative debates on the Bankruptcy Reform Act of 1978:

Contrary to language contained in the House Report, payment of a debt by means of a check is equivalent to a cash payment, unless the check is dishonored. Payment is considered to be made when the check is delivered for purposes of sections 547(c)(1) and (2).

124 Cong.Rec. S17414 (daily ed. Oct. 6, 1978) (statement of Sen. DeConcini); 124 Cong.Rec. H11097 (daily ed. Sept. 28, 1978) (statement of Rep. Edwards). The first four cited cases also rely on policy considerations behind the enactment of paragraphs (c)(2) and (c)(4), namely, to encour-

age trade creditors to continue dealing with troubled businesses by insulating normal business transactions from the trustee's avoiding power. Lastly, this approach is said to accord with commercial reality "[s]ince checks are normally considered present payments between parties." *In re O'Neill, supra* 729 F.2d at 37, 11 B.C.D. at 1028.

The second line of cases views § 547(e)(2) as controlling. *See In re Wadsworth Bldg. Components, Inc.,* 711 F.2d 122 (9th Cir. 1983) (decision under § 547(c)(4)); *In re Sider Ventures & Services Corp.,* 33 B.R. 708, 11 B.C.D. 524 (Bankr.S.D.N.Y.1983) (decision under § 547(b) however the Court suggests application of this approach to § 547(c)(2) and (c)(4) in n. 1). This section provides:

> For the purposes of this section, except as provided in paragraph (3) of this subsection, a transfer is made—
>
> (A) at the time such transfer takes effect between the transferor and transferee, if such transfer is perfected at, or within 10 days after, such time;
>
> (B) at the time such transfer is perfected, if such transfer is perfected after such 10 days; or
>
> (C) immediately before the date of the filing of the petition, if such transfer is not perfected at the later of—
>
> > (i) the commencement of the case; and
> >
> > (ii) 10 days after such transfer takes effect between the transferor and the transferee.

Under this approach, a relation back to the date of delivery is required only if the check is honored within 10 days of its delivery. The trustee argues that *Wadsworth* must be viewed as implicitly overruling the holding of *Gold Coast Seed Co.*

The third line of cases views the absence of legislative history in paragraphs (c)(2) and (c)(4) on this issue as persuasive evidence of Congressional intent and reason "if Congress had intended to treat a check for the purpose of section 547(c)(2) other than as a credit transaction, it would have

so stated." *In the Matter of Advance Glove Mfg. Co.,* 25 B.R. 521, 527 (Bankr.E. D.Mich.1982). *See also In re Naudain, Inc.,* 32 B.R. 871 (Bankr.E.D.Pa.1983). Accordingly, absent an express intent of Congress to the contrary, the normal presumption that a check is a credit transaction governs.

This Court is not convinced that Congress intended § 547(e)(2) to apply beyond the realm of secured transactions and thus chooses not to follow the second line of cases. Legislative history states:

> Subsection (e) is designed to reach the different results under the 1962 version of Article 9 of the U.C.C. and under the 1972 version because different actions are required under each version in order to make a security agreement effective between the parties.

S.Rep. No. 595, 95th Cong., 2d Sess. 89 (1978). Indeed, § 547(e)(2) in combination with subsection (e)(3) was intended to overrule *In re King-Porter Co.,* 446 F.2d 722 (5th Cir.1971) which held that a transfer within the meaning of § 60a(2) of the Bankruptcy Act occurred between a secured creditor and a debtor on the date of filing of the financing statement. *Id.* Moreover, the Sixth Circuit in *In re Arnett, supra* at 362, apparently views § 547(e)(2) to be limited to security interests wherein the Court stated:

> Congress has given security interests specialized treatment both in sections 547(c)(3) and 547(e)(2). That Congress explicitly enacted a 10-day limitation for the perfection of security interests in order to preserve "relation back" and yet accepted a 30 day period as appropriate to the negotiation of checks indicates an intent to differentiate the two types of "transfers" under the Bankruptcy Reform Act.

*cf. In re O'Neill, supra* 729 F.2d at 38, 11 B.C.D. (section 547(e)(1)(B) is limited to perfection of security interests).

This Court agrees with *In the Matter of Advance Glove, supra* that the statements made by Congressman Edwards and Senator DeConcini in the legislative debates

may not reflect the general intention of Congress. Nevertheless, this Court does not believe that inclusion of a principle in legislative history for purposes of one paragraph necessarily implies exclusion of that principle for purposes of a different paragraph. Where neither the statute nor legislative history clearly indicate Congressional intent, a court should be guided by policy considerations underlying the paragraph in question. Section 547(c)(1), (c)(2) and (c)(4) are all designed to encourage creditors to deal with a failing business and to protect ordinary business transactions. Viewing the transfer of a check to be the date of its delivery best implements this policy.[2] Therefore, the Court holds that check #1 was transferred for purposes of § 547(c) on February 5, 1982. Check #2 however was preceded by a check that was dishonored. The First Circuit recognized, without deciding, that a dishonored check may be subject to different treatment than a check that is presented for payment and honored in the ordinary course. *In re O'Neill, supra* 729 F.2d at 38 n. 1, 11 B.C.D. at 1028 n. 1.

Payment by check is ordinarily conditional upon the check being honored when presented. The legislative history to paragraph (c)(1) clearly indicates that the presumption that a check is a cash transaction is premised on a check "in the normal course of affairs." Where a check is dishonored this presumption is destroyed since nothing has been transferred by this check to relate back to the date of its delivery. The statement of Congressman Edwards and Senator DeConcini previously

cited supports this view. Thus, this Court holds that the date of delivery of a replacement check, if any, that is duly honored constitutes the date of transfer for purposes of § 547(c).[3] *Cf. Bob Grisset Golf Shoppes, Inc.*, 34 B.R. 320 (Bankr.E.D.Va. 1983) (for purposes of transfer under § 547(b) involving dishonored check, date of honor of replacement check is determinative). Therefore, check #2 was transferred for purposes of § 547(c) on March 2, 1982.[4]

III. Are The Transactions Unavoidable Under Section 547(c)?

A. Neither The First Transaction Nor The Second Transaction Is Unavoidable Under Section 547(c)(1).

The defendant claims that transfer of the checks did not represent payment on an antecedent debt but rather constituted a contemporaneous exchange under § 547(c)(1). This section provides:

(c) The trustee may not avoid under this section a transfer—

(1) to the extent that such transfer was—

(A) intended by the debtor and the creditor to or for whose benefit such transfer was made to be a contemporaneous exchange for new value given to the debtor; and

(B) in fact a substantially contemporaneous exchange

The facts of this case indicate that the transfers were in fact substantially contemporaneous. The agreement between the parties was that when and if the debtor

---

**2.** The policy concerns underlying § 547(c) are distinguishable from the purpose of § 547(b) which is to avoid transactions to favored creditors. Thus, there is a rational basis for holding that generally the date of transfer is the date of honor under § 547(b) and the date of delivery under § 547(c).

**3.** The defendant cites *In re Philadelphia Light Supply Co.*, 33 B.R. 734, 11 B.C.D. 284 (Bankr.E.D.Pa.1983) for the general proposition that the date of delivery of the original check should control even if it is subsequently dishonored. Suffice it to say that the facts in that case are distinguishable from those *sub judice* since

there dishonor was due to bank error. Whether this Court would reach such a result upon the same facts need not be decided at this time.

**4.** While this ruling may at first blush appear to undermine the Congressional purpose behind § 547(c)(1), (c)(2) and (c)(4) to encourage dealings with distressed businesses, this policy arguably should not apply to a debtor which passes NSF checks. Further, creditors fearing to deal with certain debtors due to the possibility of receiving an NSF check may protect themselves by requiring cash on delivery, certified checks, money orders, letters of credit, etc.

delivered a check to the defendant in the approximate amount of the merchandise to be shipped then the defendant would release merchandise to the debtor. Both check #1 and check #2 were presented for payment and honored within 30 days of their delivery. Under the first transaction the check and merchandise were exchanged on the same day. Under the second transaction the gap period between transfers was 14 days.[5]

The trustee argues that *In re Arnett, supra,* supports a finding that check #2 was not in fact substantially contemporaneously exchanged. (trustee's brief at 8) *Arnett* dealt exclusively with the problem of delayed perfection of security interests and held that a security interest must be perfected within 10 days after its creation to constitute a contemporaneous exchange. The holding of *Arnett* is inapplicable to our problem.

■■■ More problematic however is whether the parties intended the transfers to be contemporaneous exchanges. "Whether the parties at the outset intended the exchange to be contemporaneous is determinative" under § 547(c)(1). 4 Collier on Bankruptcy ¶ 547.37 at 547-118 (15th ed. 1979). *See also In re T.I. Swartz Clothiers, Inc.,* 15 B.R. 590, 8 B.C.D. 681 (Bankr.E.D.Va.1981). The burden of proof on this issue, as with other issues under § 547(c), lies with the defendant. *See In re Saco Local Development Corp.,* 25 B.R. 876 (Bankr.D.Me.1982).[6]

At trial Mr. Walsh testified that the defendant intended checks #1 and #2 to cover respectively the invoices generated from the merchandise that was delivered to the debtor on February 5, 1982, and February 16, 1982. (trans. at 24, 32) These invoices total respectively $18,116.39 and

$17,184.60. Mr. Lamb testified that it was the debtor's intent to pay preexisting invoices that were listed on "remittance advices" which accompanied each check.[7] (trans. at 65–66) These invoices total respectively $25,199.47 and $22,107.91, the face amount of each check.

Mr. Lamb admitted that the remittance advices had no direct relationship with the conversation or transaction entered into with Mr. Walsh. (trans. at 67–68) The invoices on the remittance advices were selected by an employee of the debtor who had no knowledge of the dealings between the parties. (trans. at 59–60, 62) The selection of invoices was necessary for the debtor's computer to print up the checks in question (trans. at 59, 64) and the invoices representing the merchandise delivered on February 5 and February 16 were not prepared on the date the checks were issued. (trans. at 57–58)

Section 547(c)(1) requires the Court to find that it was not only the intent of the creditor but also the intent of the debtor that the transfer was contemporaneous. The evidence is clear that there was no understanding between the parties as to which invoices the checks in question were to be applied, indeed Mr. Walsh and Mr. Lamb did not even discuss the issue. (trans. at 33, 58) The debtor's normal accounting procedure was to apply its checks against its oldest invoices. (trans. at 59, 65) This procedure was utilized here with the only modification being that the invoices selected had to approximate the amount requested by Mr. Walsh. The Court cannot find upon these facts that the debtor intended the checks to apply to the newly generated invoices. The prime concern of the defendant, as related to Mr. Lamb, was that its receivables account with the debtor remain stable. Applying checks against

---

5. The shipment of merchandise under the second transaction occurred on February 16, 1982. The date of transfer of check #2 was March 2, 1982, as determined in Part II of this decision.

6. Section 547(g) of the Bankruptcy Amendments and Federal Judgeship Act of 1984 legislates this holding.

7. While the original second check had a remittance advice attached to it which listed various preexisting invoices, the replacement check's remittance advice did not list any invoices. Mr. Lamb indicated however that the debtor intended the original remittance advice to control as to which invoices the replacement check would be applied. (trans. at 67)

the oldest invoices is consistent with this concern. Probably most revealing is the third transaction between the parties which the trustee has stipulated constituted a contemporaneous exchange. As explained by Mr. Walsh at trial, "we found out what [the debtor] wanted [and] priced it. ... I wrote out the invoice, they sent me the check; when I received the check, I shipped them the goods." (trans. at 37) In this last transaction, the check amount and remittance advice correspond directly to the invoice for the goods delivered on March 5, 1982. Instead of applying its usual first in, first out accounting procedure, the debtor applied its check to the latest invoice received. Here, unlike the two transactions in question, both parties clearly intended a contemporaneous exchange and not a credit transaction.

B. Only The First Transaction Is Unavoidable Under Section 547(c)(4).

Section 547(c)(4) provides:

(c) The trustee may not avoid under this section a transfer—

(4) to or for the benefit of a creditor, to the extent that, after such transfer, such creditor gave new value to or for the benefit of the debtor—

(A) not secured by an otherwise unavoidable security interest; and

(B) on account of which new value the debtor did not make an otherwise unavoidable transfer to or for the benefit of such creditor

■ "In other words, even though a creditor has received a preference ..., he may still offset [against a preference claim] any subsequent unsecured credit which he extended to the debtor." 4 Collier on Bankruptcy ¶ 547.40 at 547–123 (15th ed. 1979) *quoting* Countryman, *Bankruptcy Preferences-Current Law and Proposed Changes*, 11 U.C.C.L.J. 95, 103 (1978). As held by the Sixth Circuit, § 547(c)(4) legislates a subsequent advance rule and not the net result rule. *In re Fulgham Construction Corp.*, 706 F.2d 171 (6th Cir. 1983).

■ In the first transaction at issue, the transfer from the debtor to the defendant occurred on February 5, 1982, as determined in Part II of this decision. Shortly thereafter, also on February 5, 1982, the defendant released merchandise to the debtor. "New value" includes "money's worth in goods" under § 547(a)(2). Since the amount of new value transferred exceeds the amount the trustee seeks to avoid, the first transaction is unavoidable in full.

In the second transaction at issue, the transfer from the debtor to the defendant occurred on March 2, 1982, as determined in Part II of this decision. Since no new value was supplied the debtor by the defendant subsequent to this date, § 547(c)(4) is of no consequence for the purpose of this transaction.

C. The Second Transaction Is Not Unavoidable Under Section 547(c)(2).

Section 547(c)(2) provides:

(c) The trustee may not avoid under this section a transfer—

(2) to the extent that such transfer was—

(A) in payment of debt incurred in the ordinary course of business or financial affairs of the debtor and the transferee;

(B) made not later than 45 days after such debt was incurred;

(C) made in the ordinary course of business or financial affairs of the debtor and the transferee; and

(D) made according to ordinary business terms

■ Since the transfer in the second transaction occurred on March 2, 1982, any debt incurred subsequent to January 16, 1982, falls within the 45 day period prescribed by § 547(c)(2) and is unavoidable. The defendant argues that the list of invoices on the remittance advice attached to the original second check does not constitute a direction by the debtor as to how it was to apply the debtor's $22,107.91 payment. In the absence of such direction, the defendant claims it is free to apply this payment as it pleases and has chosen to apply it to debts incurred by Fasano/Har-

riss subsequent to January 16, 1982, that still remain outstanding and exceed the payment to it.

The Bankruptcy Code does not specify how payments are to be applied against debt for purposes of § 547(c)(2) or otherwise. Therefore, the Court must look to state law. In *People ex rel. Michigan Electric Supply Co. v. Vandenburg Electric Co.*, 343 Mich. 87, 90–91, 72 N.W.2d 216 (1955) the Court summarized Michigan caselaw on this issue as follows:

[A] debtor may direct application of a payment before or at the time it is made, but, if he does not do so, the creditor may apply it as he pleases either at the time of payment or afterwards, if before controversy arises concerning it; and in the absence of such action by either debtor or creditor, if the credit merely appears in the general account and there is no evidence of any understanding to the contrary, the credit will be considered as applied to debits in the order of time in which the debits occurred....[8]

The Court finds that Fasano/Harriss directed payment of check #2 to particular invoices attached to the original second check. These invoices are dated January 4, 1982; January 6, 1982; January 14, 1982; and January 21, 1982. Debts are "incurred" under § 547(c)(2) when the debtor first becomes legally obligated to pay, *Barash v. Public Finance Corp.* 658 F.2d 504 (7th Cir.1981), *i.e.*, not when the invoices are dated or received but when the merchandise is delivered. "Receiving records" signed by an agent of the debtor and attached to the second check indicate that the debtor received merchandise from the defendant on the identical dates that the invoices are dated. Thus, only payment on the last invoice in the amount of $348.47 is unavoidable pursuant to § 547(c)(2) as previously stipulated by the trustee.

Under the facts of this case, even absent direction by the debtor, the defendant's application of payment must be rejected. No evidence was introduced as to how

Acme Carton Corporation actually applied the $22,107.91 to outstanding invoices "before controversy [arose] concerning it." Rather, the defendant introduced an exhibit prepared the morning of trial that was neither a ledger sheet nor other paper kept in the normal course of accounting but prepared exclusively for the purposes of trial to defeat the plaintiff's action. (trans. at 40–41, 45) Moreover, Mr. Walsh testified that the defendant's usual accounting practice was to apply payments to its oldest accounts. (trans. at 44–45) "[T]he burden is on the creditor to show by a preponderance of the evidence what application, if any, he made of the amount received." *People ex rel. Michigan Electric Supply Co. v. Vandenburg Electric Co., supra* 343 Mich. at 91, 72 N.W.2d 216. This burden has not been met. Thus, under Michigan law the presumption that oldest debts are paid first would be invoked. Under either approach it clearly appears that check #2 was transferred more than 45 days after the debts were incurred.

Accordingly, the trustee is entitled to judgment in the amount of $21,759.44 as prayed for under the second transaction.

---

**8.** Other states have similar rules, as for example Georgia, *see In re Georgia Steel, Inc.*, 38 B.R. 829, 11 B.C.D. 1163, 1167 (Bankr.M.D.Ga.1984), and Wisconsin, *see In re Gander Mountain,* 29 B.R. 260, 263–64 (Bankr.E.D.Wis.1983).